**UNITED STATES of America ex rel. Samuel D. ROBINSON, Petitioner-Appellant,**

v.

**Vernon G. HOUSEWRIGHT, Respondent-Appellee.**

No. 75–1123.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1975.

Decided Nov. 26, 1975.

Stuart R. Cohn, W. Ronald Cooper, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Thomas W. Connors, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the decision of the district court denying the petition of Samuel D. Robinson for a writ of habeas corpus. Pursuant to Fed.R.App.P. 22(b), the court certified the existence of probable cause for appeal. The present appeal varies from the frequent posture of the habeas cases in this court which is an appeal from the dismissal of the petition without an evidentiary hearing.

In the present case upon Robinson seeking post-conviction relief in the state courts, the case was remanded for an evidentiary hearing. *People v. Robinson,* 5 Ill.App.3d 1065, 284 N.E.2d 505 (1972). The Cook County court denied relief following evidentiary hearing which action was affirmed on appeal. *People v. Robinson,* 17 Ill.App.3d 310, 308 N.E.2d 88 (1974). In the district court, the parties stipulated that there were no additional witnesses to be called and that the district court could rely upon the testimony in the state court hearing in lieu of an evidentiary hearing in the federal court.

On this appeal, Robinson argues that the direct participation of the trial judge in negotiations leading to his plea of guilty was not consistent with constitutional standards and that he was denied effective assistance of counsel because the public defender represented multiple defendants with conflicting interests.

### I. Plea Negotiations

The thrust of appellant's first argument is that the trial judge's participation in plea negotiations constituted, under the facts of this case, an improper and unconstitutionally coercive influence upon petitioner's change of plea. In the state court evidentiary hearing, Robinson took the position that constitutionally the trial judge cannot participate in negotiations which lead up to the plea of guilty, which appears to be a contention for a per se rule against judicial intervention in the process. The district court, mistakenly according to the appellant, so construed the petitioner's position. In this court, Robinson denies he is arguing for a per se rule. The argument rests instead on an evidentiary claim that there was no effort by defense counsel and the prosecutor to reach

agreement on a plea to the charge of murder *prior* to the court's participation and that, again *prior* to the judge's involvement, the appellant had not indicated a desire to plead guilty to the charge. The appellant characterizes the central issue as whether or not the constitution prohibits judges from actively engaging *from the start* in closed-door negotiations outside the presence of the defendant or any court reporters.

▇ We note, first that this manner of characterizing the facts revealed in the evidentiary hearing is somewhat inaccurate. The record makes clear that Robinson's court appointed attorney had his client's approval to discuss with the prosecutor a reduction of the charge from murder to manslaughter. After communicating to Robinson the refusal of the State to agree to such a reduction, the appellant's counsel then told him that he would attempt to secure the statutory minimum sentence in further negotiations. The appointed counsel then met with the prosecutor and the judge in the judge's chambers to discuss a plea. We find no basis in the evidence for concluding that the judge intruded from the outset or actively initiated plea negotiations. On the contrary, the record suggests that defense counsel had a two-phase strategy: first to bargain for a reduced charge and, second, to bargain regarding the sentence. We think it clear that the defense attorney and the prosecutor did negotiate before their conference with the judge.

Even accepting on an arguendo basis appellant's characterization of the evidence, we would not be required to hold that the judge's participation in the negotiations here involved violated constitutional standards. Constitutional challenges to judicial participation in plea negotiations have appeared rather frequently in the reported cases. Plea bargaining, at least as practiced, has been the subject of adverse criticism.[1] Petitioner admits that negotiated guilty pleas are often permissible, but insists that the trial judge cannot constitutionally enter into plea negotiations until after a tentative agreement between prosecution and defense has been reached. This contention has been expressly rejected by the Fourth Circuit, and, quite recently, it has been impliedly rejected by this court.

In *Brown v. Peyton,* 435 F.2d 1352 (4th Cir. 1970), *cert. denied,* 406 U.S. 931, 92 S.Ct. 1785, 32 L.Ed.2d 133 (1972), a state prisoner raised the issue whether the trial court's participation in plea bargaining negotiations vitiated the voluntariness of a subsequent guilty plea. The court adhered to its earlier view that properly conducted plea bargaining served a useful purpose for society, the prisoner, and the quality of justice in those cases which must be tried. The court expressly refused to hold that a judge's participation in the plea discussion in itself rendered the plea involuntary, stating as its reason that the American Bar Association Standards Relating to Pleas of Guilty prescribed a proper rule of practice, but did not state a constitutional limitation. *Id.* at 1357.[2]

This court has not faced the exact question raised in *Brown, supra,* but it has given direct, serious consideration to major sections of the ABA Standards Relating to Pleas of Guilty, and to the Function of the Trial Judge, including § 4.1(a).[3] In *Moody v. United States,*

---

1. *See, e. g.,* President's Commission on Law Enforcement and Administration of Justice, Task Force on Administration of Justice, Task Force Report: The Courts 9 (1967): "The system usually operates in an informal invisible manner. There is ordinarily no formal recognition that the defendant has been offered an inducement to plead guilty. Although the participants and frequently the judge know that negotiation has taken place, the prosecutor and defendant must ordinarily go through a courtroom ritual in which they deny that the guilty plea is the result of any threat or promise." *See also, Moody v. United States,* 497 F.2d 359 (7th Cir. 1974), discussed hereinafter.

2. Section 3.3 of the Draft approved in 1968, stated that "[t]he trial judge should not participate in plea discussions."

3. Section 4.1(a) of the ABA Standards (1972) reads as follows:

   "The trial judge should not be involved with plea discussions before the parties have

497 F.2d 359 (7th Cir. 1974), the court recognized that *Santobello v. New York,* 404 U.S. 257, 260–261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), has characterized "plea bargaining" as an essential component of the administration of justice which, when properly administered, is to be encouraged. The *Moody* decision explicitly focused discussion on the ABA Standards, but it does not suggest that they necessarily embody direct constitutional requirements. Indeed, an analysis of the language of *Moody,* which was circulated among all judges in regular active service, 497 F.2d 359, 365 n.7, clearly demonstrates that this court relied on its supervisory power, not constitutional grounds, in requiring federal trial courts to undertake thereafter an expanded Rule 11 inquiry.

Unlike our relationship with the federal district courts within this circuit, we have no supervisory power over the Cook County court. Moreover, the Illinois Supreme Court apparently views the ABA Standards pertaining to judicial participation in plea bargaining as stating a proper rule of practice but not as stating a constitutional limitation. This view is perfectly consistent not only with *Brown* and *Moody, supra,* but also with *Santobello, supra.* Unless the Fourteenth Amendment prohibits judicial participation in plea negotiations, this court should not interfere with state efforts to incorporate properly administered "plea bargaining" as one component, arguably an essential one, in its administration of criminal justice.

■ Subsequent to the murder conviction in the present case, the Illinois Supreme Court adopted a new rule regarding guilty pleas. Ill.Rev.Stat. ch. 110A, para. 402 (Supreme Court Rule 402). The Illinois Court followed the ABA Standards in large measure, but it did

make some important modifications. Subparagraph (d)(1)[4] is particularly relevant to the present case. Although the ABA Standards expressly state that "[t]he trial judge *should* not *participate* in plea discussions," American Bar Association Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 3.3, at 71–72 (1968) (emphasis supplied); the state court of last resort modified the language by substituting the word "shall" for "should," and by replacing the word "participate" with "initiate." Note 4 *supra.* In appellant's previous state court appeal from the denial of post-conviction relief, the intermediate appellate court interpreted the variation from the language of the ABA Standards as reflecting the view that the Illinois Supreme Court would not hold all judicial participation in plea bargaining unconstitutional or even improper. *People v. Robinson,* 17 Ill.App.3d 310, 308 N.E.2d 88, 91 (1974). We concur with that analysis.

■ The real question in this case, then, is whether Robinson's change of plea was voluntary. It is well settled that a guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void, *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Although the defendant testified he believed that he had no effective choice to decide whether or not to plead guilty, 17 Ill.App.3d 310, 312, 308 N.E.2d 88, 90, this court cannot look into the subjective mental set of a defendant to see to what extent misconceptions played a part in his guilty plea. See *Calabrese v. United States,* 507 F.2d 259 (1st Cir. 1974).

■ We deem it preferable to base an analysis upon objective record facts rather than upon the defendant's recital of what he now claims were his subjective

---

reached an agreement other than to facilitate fulfillment of the obligation of the prosecutor and defense counsel to explore with each other the possibility of disposition without trial."

American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge 51 (1972).

**4.** Rule 402(d)(1) provides: "The trial judge shall not initiate plea discussions."

mental impressions. We recognize that there is merit in the analysis of the powerful influence of a trial judge,[5] but that influence must be examined within the context of its exercise.

■ We approve the dispositive language of Judge English in the Illinois Appellate Court's decision in this litigation:

"This does not preclude a finding that a plea in a particular case might be involuntary, depending on the action or statements of the judge considered on a case-by-case basis. But there is nothing in the record of the instant case to lead us to the conclusion that any ground exists for defendant's conclusion that he would be penalized were he to have rejected the agreement and exercised his right to a trial by either court or jury. He was informed by his counsel that the State had evidence amounting to a confession, that he had no defense, and that the State would not reduce the charge. In such circumstances, his plea of guilty predicated upon the trial judge's promise of the shortest minimum sentence gives no indication of having been coerced or otherwise involuntary so as to render it denial of due process." 308 N.E.2d at 91–92.

## II. Effective Assistance of Counsel

Appellant's second contention is that he was denied effective assistance of counsel by reason of the fact that his court-appointed lawyer represented multiple defendants with conflicting interests. He argues that, as soon as counsel determined that the interests of his other clients were best served by a guilty plea by Robinson, he should have immediately sought and received permission to withdraw. Instead of pursuing this course of action, however, counsel negotiated with the presiding judge for a sentence based on a guilty plea and then urged Robinson to accept the result of the negotiations. Appellant does not challenge the general competence of the appointed counsel, but insists that he should not have sought to persuade the defendant to change his plea once he determined that a guilty plea was of value to the other clients.

■ The Sixth Amendment's [6] guarantee of Assistance of Counsel necessarily requires that a criminal defendant be represented not only by counsel satisfying at least a minimum standard of professional competency, see *United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir. 1975), *cert. denied sub nomine, Sielaff v. Williams*, —— U.S. ——, 96 S.Ct. 148, 45 L.Ed.2d 109; *Matthews v. United States*, 518 F.2d 1245 (7th Cir. 1975), but also by counsel whose undivided loyalties lie with his client. *United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975). Such representation is lacking if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents as a vigorous advocate having the single aim of acquittal by all means fair and honorable are hobbled or fettered or restrained by commitments to others. *Id.* at 1263 n.10, quoting *Porter v. United States*, 298 F.2d 461, 463 (5th Cir. 1962). Moreover, defense counsel is obligated to bring to the attention of his client and the court any possible conflict of interest that develops at trial as soon as he becomes aware of such a situation. *Jeffers, supra* at 1263 n.11. See also American Bar Association Standards for Criminal Justice, The Defense Function § 3.5(a) (1971).[7] As a matter of ethics, a

---

5. See, for example, *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y. 1966).

6. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

7. Section 3.5(a) provides:

"At the earliest feasible opportunity defense counsel should disclose to the defend-

lawyer should resolve all doubts against the propriety of the representation of multiple clients having potentially differing interests. See Ethical Consideration 5–15, A.B.A. Canons of Professional Ethics (1969).

The potential conflict of interests that exists when multiple criminal defendants are represented by the same counsel has long been recognized by the courts. *United States v. Mandell*, 525 F.2d 671 (7th Cir. 1975). A court order requiring that one lawyer shall simultaneously represent multiple defendants represents so severe a danger of impermissible conflict that the American Bar Association has recommended that such dual representation be undertaken only in the extraordinary case:

> "The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation."

A.B.A. Standards: The Defense Function § 3.5(b) (1971). Accordingly, some courts have indicated the desirability of the judge affirmatively inquiring of multiple defendants represented by a single defense counsel to determine whether they are cognizant of the risks of conflict of interests and whether, in the light of those risks, they still wish to maintain their common representation. See *United States ex rel. Hart v. Davenport*, 478 F.2d 203, 211 (3d Cir. 1973); *United States v. Foster*, 469 F.2d 1, 5 (1st Cir. 1972).

In the present case, the testimony presented at the evidentiary hearing does not indicate that defense counsel brought to Robinson's attention a possible conflict of interests. The appointed counsel testified that he did not see any

possible prejudice to Robinson if all three defendants were jointly tried:

> "Q. He [Robinson] couldn't have been prejudiced in any manner, if all three went to trial, could he?
>
> A. I couldn't see that in any way."

Further, defense counsel recognized that he could, under *People v. Johnson,* 13 Ill.2d 619, 150 N.E.2d 597 (1958), move for severance. We note that the opposing parties argue over the question of whether the grant of a motion would be automatic or discretionary. We entertain no doubt that if Robinson had not pled guilty a motion for severance would have been available. This, however, would not have been on the motion of Robinson but of his two co-defendants. They were the ones who would have been exposed to prejudice by being tried with Robinson. At the time of the plea bargaining, the matter of the necessity of a severance was not yet of significance. It is apparent that counsel was directing his attention to what appeared to be the best interests of Robinson.

On the basis of the facts of this case, we conclude that Robinson's rights to effective assistance of counsel were not violated. The record discloses that the court appointed attorney had not ascertained the presence of a disabling conflict of interests. Nor does anything suggest that he would not have brought to the attention of the court the existence of such a conflict if he had determined that he was placed in an ethically impermissible role. The record does not support the suggestion that defense counsel induced his client to plead guilty for the purpose of benefiting his other clients by effecting a severance. In light of counsel's testimony as to his belief that the State had a written statement tantamount to a confession and that Robinson had no viable defense to the murder charge, his good faith suggestion that Robinson plead guilty certainly met the minimum standard of pro-

---

ant any interest in or connection with the case or other matter that might be relevant

to the defendant's selection of a lawyer to represent him."

fessional representation under the broadened rule established in *Williams, supra.*

Our recent decision in *Mandell, supra,* requires this court to reject appellant's constitutional claim. In that decision, we agreed with the Second Circuit that the primary responsibility for the ascertainment and avoidance of conflict situations must lie with the members of the bar. Moreover, we expressly refused to follow the D.C. Circuit rule, articulated in *Lollar v. United States,* 126 U.S. App.D.C. 200, 376 F.2d 243, 245–46 (1967), and *Campbell v. United States,* 122 U.S.App.D.C. 143, 352 F.2d 359, 360–61 (1965), which requires a judge at the outset of a criminal trial where multiple-defendant representation exists to determine whether defendants are aware of the dangers and knowingly and intelligently waive single representation. 525 F.2d at 675–76. The *Mandell* court stated:

> "Thus, we do not feel the D.C. Circuit's affirmative inquiry requirement is mandated by the Sixth Amendment, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), or any other Supreme Court pronouncement. And, at this time, we join the Third Circuit in declining to adopt such a rule based on our inherent supervisory authority." *Id.* at 677.

After setting forth that conclusion, *Mandell* went on to consider exactly what the defendants had to demonstrate in order to prevail: ". . . [W]e believe that it is incumbent upon the defendants to demonstrate, with a reasonable degree of specificity, that a conflict of interests actually existed at trial." *Id.*

■ We conclude that this last ruling effectively disposes of an issue that appears in this present appeal. In both briefs and oral argument, debate in this present appeal has focused on the type of prejudice the defendant need demonstrate in order to secure habeas relief. Appellant's counsel argues that a showing of potential conflict suffices, while the State opts for proof of *actual* prejudicial conflict. We think that the quoted ruling from *Mandell* sets forth the appropriate standard. Moreover, the *Mandell* opinion augments that statement with an explanatory note:

> "Thus, we do not shift the burden of persuasion to the government in such a circumstance. And, we do not adopt as low a standard of proof as that articulated by the Third Circuit in its decisions. . . . Thus, we require a defendant who has retained counsel in conjunction with codefendants to demonstrate something more than 'a possible conflict of interest . . . however remote.'" *Id.* at 677.[8]

Thus, this Circuit has refused to follow *Davenport, supra,* which held that it would regard joint representation as constitutionally defective upon a showing of a possible, albeit remote, conflict of interest or prejudice.

■ In short, the appellant's second major contention rests on comparable ground as does his first. The ABA recommendations regarding joint representation, like the "plea bargaining" recommendations, set forth norms of proper practice but do not establish constitutional limitations. We decline to constitutionalize them.

Although we hold that the appellant's constitutional claims are unsupported by the case law of this circuit or by the objective record facts, we are not to be understood as suggesting that the negotiation procedures utilized in the state court proceedings represented a proper model. The new Supreme Court Rule 402 will provide more precise guidelines. Nor are we to be understood as implying approval of the manner in which the post-conviction evidentiary hearing was handled. Like the district court, we are somewhat troubled by the fact that the evidentiary hearing was conducted before the same judge whose allegedly coercive participation in the plea negotia-

---

**8.** We do not conceive the duty resting upon appointed counsel to be any less than upon retained counsel insofar as avoiding conflict of interest is concerned.

tions was the subject of defendant's criticism. Nevertheless, the record discloses that a fair hearing was accorded the petitioner with full opportunity to present his case.

Since we find no error of constitutional dimension, the order dismissing the writ of habeas corpus is

Affirmed.