Earl William **TOLER**, Jr., Movant,

v.

**STATE of Missouri, Respondent.**

**No. 37523.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 31, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

---

William Shaw, Public Defender, Richard H. Sindel, Asst. Public Defender, Clayton, for movant.

John Danforth, Atty. Gen., Preston Dean, Chief Counsel, Jefferson City, Courtney Goodman, Jr., Prosecuting Atty., John Newton, Asst. Pros. Atty., Clayton, for respondent.

GUNN, Judge.

On January 20, 1975, movant, hereinafter defendant, entered a plea of guilty to two counts of robbery in the first degree with a dangerous and deadly weapon. He received a sentence of 13 years on each count to run concurrently. On October 2, 1975, the defendant filed a motion pursuant to Rule 27.26 to vacate the judgment and sentence. The trial court overruled the motion without a hearing. In its memorandum opinion, the trial court stated:

"Defendant's Motion to Vacate Judgment pursuant to Supreme Court Rule 27.26 is denied. Court finds Rule 25.04 was complied with by the sentencing judge and further finds that the Motion, files and records of the case conclusively show that the prisoner is entitled to no relief pursuant to Rule 27.26(e)."

The defendant appeals from the adverse ruling claiming: 1) his plea of guilty was the product of duress and coercion resulting from the sentencing judge's involvement in plea bargain discussions; and 2) the trial court erred in denying a hearing on his 27.26 motion. We affirm.

The defendant contends that his plea of guilty to the two counts of robbery in the first degree was a product of coercion and duress brought about by the sentencing judge's involvement in the plea bargaining process. As a result of plea bargaining, it was agreed that by pleading guilty the defendant would receive two fourteen year sentences to run concurrently.[1] In addition, it was understood that an attempt would be made to obtain the defendant's release from the balance of a seven month federal sentence still to be served. The record of the defendant's guilty plea indicates that the trial court had been involved in formulating

1. Despite the court's acceptance of this agreement, the defendant was sentenced to two thirteen year sentences to run concurrently.

the plea agreement. For example, at one point the judge said: "Because of plea negotiations between yourself, your lawyer, me and the Prosecuting Attorney, I am going to sentence you to two 14 year sentences and run them concurrent . . . ." At another point in the hearing the judge stated:

> "This case, as you know, is assigned out for trial; you wanted five years, the State wanted twenty and we have agreed and negotiated on this fourteen years.
>
> \* \* \* \* \* \*
>
> . . . I have cut the State six years and I have raised what you wanted a few years, and this is a sort of compromise between you, your lawyer and myself."

The defendant claims that by injecting himself in the plea negotiations, the judge had placed the power of the court behind the agreement and could no longer be impartial. The defendant contends that the coercive effect of the judge's participation was compounded by the defendant's awareness that the judge could impose a more severe sentence if he stood trial, by the judge's acknowledging the State had a strong case against him and by the judge's comment that the defendant was "in a bunch of trouble because this is a serious armed robbery and you have a bunch of prior felonies." The defendant claims that as a result of both these direct and subtle pressures exerted by the judge, his plea of guilty was involuntary and should be vacated.

The Missouri Supreme Court has stated that ordinarily a judge should not participate in plea discussions and that these negotiations should normally be limited to the defendant's counsel and the prosecutor. *State v. Tyler*, 440 S.W.2d 470 (Mo. banc 1969).[2] The court quoted with approval the following portion of the American Bar Association's "Standard Relating to Pleas of Guilty":

"3.3 Responsibilities of the trial judge.

(a) The trial judge should not participate in plea discussions.

(b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty \* \* \* in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. If the trial judge concurs, but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty \* \* \*." *State v. Tyler,* supra at 474. See also *Bonner v. State*, 535 S.W.2d 289 (Mo.App.1976).

The commentary relating to these standards reflects the A.B.A.'s disapprobation of a judge becoming involved with the actual plea negotiations. A comment to paragraph 3.3(b) states:

"[t]his procedure . . . does not contemplate participation by the judge in the plea discussions. The judge only becomes involved after the parties have reached agreement, and thus there would appear to be little basis upon which the defendant or counsel could conclude that the judge is attempting to force a certain result upon the parties. Moreover, the judge does not initiate the conference; he is brought into the matter prior to tender of the plea only upon the request of the parties." "Standards Relating to Pleas of Guilty" at 75.

**2.** The movant in *State v. Tyler*, supra, subsequently brought a federal habeas corpus action in which the Eighth Circuit Court of Appeals granted him a new hearing on the issue of the voluntariness of his guilty plea. *Tyler v. Swen-* son, 427 F.2d 412 (8th Cir. 1970). However, the grounds for this ruling were unrelated to the Missouri Supreme Court's statements concerning the proper role of the judge in the plea bargaining process.

It is clear from the record before us that the sentencing judge's conduct did not conform to the standards set out by the American Bar Association and which were approved by the Supreme Court in *State v. Tyler,* supra. From the judge's own statements it appears that he did not merely approve a tentative agreement submitted by the prosecutor and defense attorney, but, rather, actively participated in the plea negotiations.

While we cannot approve of the judge's conduct, the fact that he participated in the bargaining does not end our inquiry into the voluntariness of the defendant's plea of guilty, which, is the essential matter at issue. *U. S. ex rel. Robinson v. Housewright,* 525 F.2d 988 (7th Cir. 1975); *State v. Tyler,* supra. We must determine the coercive effect, if any, this participation had upon the defendant's decision to plead guilty in light of all the circumstances surrounding his plea. *U. S. ex rel. Robinson v. Housewright,* supra; *State v. Tyler,* supra. The critical issue is whether the plea of guilty was in fact voluntarily made with understanding of the nature of the charge. *Flood v. State,* 476 S.W.2d 529 (Mo.1972). It should be noted that "if an accused is misled or induced to plead guilty by mistake, misapprehension, persuasion, or the holding out of a hope which proves to be false or ill-founded, his plea is not voluntary." *Moore v. State,* 488 S.W.2d 266, 270 (Mo.App.1972); *Latham v. State,* 439 S.W.2d 737 (Mo.1969). However, the mere fact that the defendant's plea of guilty resulted from plea bargaining is not a sufficient basis for finding the plea involuntary. *Pulliam v. State,* 480 S.W.2d 896 (Mo.1972); *Coleman v. State,* 473 S.W.2d 692 (Mo.1971); *Rayford v. State,* 504 S.W.2d 285 (Mo.App.

1973). A review of the record makes it abundantly clear that the defendant's plea was voluntarily made, and that the trial court's participation in the plea bargaining did not coerce the defendant to plead guilty.

■ The record indicates that the trial court explained to the defendant in elaborate and thorough detail the sentence he would receive if he pleaded guilty, as well as the minimum and maximum sentences available under the law. The defendant acknowledged that he understood that by pleading guilty he was waiving his constitutional rights attendant to a jury trial. Thus, the requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), were fulfilled. The prosecutor detailed the evidence against the defendant, and the defendant admitted his guilt. The defendant stated that he was not addicted to either drugs or alcohol and emphasized that it was his decision to plead guilty. He admitted that his decision was made free of any coercion or physical or mental intimidation. Throughout the hearing, the judge repeatedly told the defendant that he did not have to plead guilty and that he was entitled to a jury trial. The judge stressed that if the defendant chose to go to trial, the possibility existed that he could be acquitted by the jury. If he were found guilty the sentence imposed might be more or less than fourteen years.[3] The most conclusive evidence demonstrating that the defendant's plea was voluntarily made despite the judge's participation in the plea bargaining is the fact that on several occasions during the hearing, the defendant was offered more time to consider his plea. For example, the judge asked the defendant if he wanted an oppor-

---

**3.** Counsel for the defendant asked the court whether the defendant would receive more than fourteen years if he were found guilty after a jury trial. The judge replied that the nature of the sentence would be decided at that time after review of a presentence report. The judge did say that off-hand, the defendant would certainly get in excess of ten years and maybe more than fourteen. It is clear from the record, however, that at no time did the trial judge intimate that if the defendant desired to plead not guilty and stand trial he would im-

pose a more severe sentence. Thus, we are not confronted with the court threatening to penalize the defendant if he chose to plead not guilty. Such circumstance has been held to render a guilty plea involuntary. *Euziere v. U. S.,* 249 F.2d 293 (10th Cir. 1957). Nor are we confronted with the situation where a defendant is misled by not being informed of the fact that the trial court had committed itself to a particular sentence. *State v. Edmondson,* 438 S.W.2d 237 (Mo.1969). See also *Brown v. State,* 485 S.W.2d 424 (Mo.1972).

tunity to discuss his decision with his family before entering a plea. The defendant was also afforded an opportunity to postpone pleading until word was received from the United States probation officer concerning the suspension of the seven month sentence he still had to serve. Despite these opportunities to delay pleading, the defendant chose to plead guilty. In the light of these facts it cannot be said that the defendant's decision to plead was the product of coercion or duress. The record conclusively demonstrates that the defendant's plea was voluntary,[4] and the test of *Flood v. State*, supra, has been fully accomplished. There was no manifest injustice in refusing to

4. The following excerpts from the transcript positively establish that in spite of any participation in plea bargaining by the court, the defendant's plea of guilty was knowingly and voluntarily made and without coercion on the part of the trial court:

" . . . If you do not want to plead guilty you do not have to. And, you were tried before and acquitted. Now, you might be acquitted in this case too. I understand this case is a little stronger than the other case, but you might be acquitted; do you understand that?
The Defendant: Yes, Sir.
The Court: And you will be tried under the Habitual Criminal Act. If this case were tried before a St. Louis County Jury you might win it or you might lose it; do you understand that?
The Defendant: Yes, Sir.
The Court: If you win it you walk out a free man and all you would have to serve is the seven months you have been revoked on by Uncle Sam; do you understand that?
The Defendant: Yes.
The Court: If you are convicted you might get more or you might get less than the fourteen years; do you understand that?
The Defendant: Yes.
The Court: And knowing all of this in advance, knowing you will not receive probation and knowing that you will receive fourteen years in the Missouri Department of Corrections, it is my understanding you want to plead guilty, is that right?
The Defendant: Yes."

The prosecutor then recited a detailed statement of the State's evidence against the defendant. The colloquy between the court and the defendant continued as follows:
"The Court: Are you guilty of this charge, Mr. Toler?
The Defendant: Yes, Sir.
The Court: You heard the facts the State said, what they would prove if this case went to trial?
The Defendant: Yes, Sir.
The Court: I don't know what a St. Louis County Jury would do. I have seen them convict on very little evidence and acquit people with lots of evidence.
*    *    *    *    *    *
"The Court: When did this robbery take place?
The Defendant: April the 18th.
The Court: Where?
The Defendant: In North St. Louis County, Lewis and Clark State Bank.

The Court: Was the robbery substantially as Mr. Murphy just said?
The Defendant: Yes, Sir.
The Court: Were you involved in that robbery?
The Defendant: Yes, Sir.
The Court: Did you wear a ski mask in that robbery?
The Defendant: Yes, Sir.
The Court: Whose mask was it, yours or somebody else?
The Defendant: Mine.
The Court: Where did you get the guns?
The Defendant: I don't know where Charles got his. I have had mine.
The Court: Did you use a gun?
The Defendant: Yes, Sir.
The Court: Were these people hurt in the robbery?
The Defendant: No, Sir.
The Court: What was your part in the robbery; just tell me what you did?
The Defendant: I stood there and told the man to throw the bag of money.
The Court: Then, what?
The Defendant: Then I picked it up and was gone. I got his wallet.
*    *    *    *    *    *
"The Court: Mr. Toler, do you understand all of your Constitutional rights?
The Defendant: Yes, Sir.
The Court: Are you willing and ready to try this case, Mr. Watson?
Mr. Watson: [defendant's attorney] I would not be ready tomorrow morning, by the fact Mr. Toler was incarcerated by the Federal Government since December 24th, and as a result was notified by Mr. MacDaniels, of whom you spoke a few minutes ago, he was going to be placed there to finish out his Federal time. We did not get that information until last Friday and at that time we both felt he was not there, and I did not have a chance to see him and did not prepare the case for trial because of the Federal incarceration.
The Court: But if the case has to be tried you will try it?
Mr. Watson: Yes, Your Honor.
*    *    *    *    *    *
"The Court: Is this your decision, Mr. Toler, or your lawyer's decision?
The Defendant: I am the one pleading, it is my decision but I am basing it on his theories of it.
Mr. Watson: And my negotiations.
The Defendant: Yes, it is my decision.
*    *    *    *    *    *

permit a withdrawal of defendant's guilty plea. *Brown v. State*, supra. Defendant's guilty plea was not maculated by the trial court's participation in the negotiations in this case, and we commend the trial court for the manner in which it advised defendant of his rights and interrogated him regarding the plea.

We also hold that no error was committed in denying the defendant a hearing on his 27.26 motion, as the motion, files, transcript and records of the case "conclusively show that the prisoner is entitled to no relief." Rule 27.26(e). *Smith v. State*, 513 S.W.2d 407 (Mo. banc 1974); *Buckley v. State*, 539 S.W.2d 736 (Mo.App.1976); *Fisk v. State*, 515 S.W.2d 865 (Mo.App.1974); *Lewis v. State*, 513 S.W.2d 772 (Mo.App. 1974).

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.

"The Court: Has anybody intimidated you, either physically or mentally, in any way, to come in here and plead guilty?
The Defendant: No, Sir.
The Court: Has anybody coerced [sic] you?
The Defendant: No, Sir.
The Court: Has any Federal probation officer or any of the men you are with with the Department of Welfare or St. Louis County forced you to come in here and plead guilty?
The Defendant: No, Sir.
The Court: Has your lawyer forced you to plead guilty?
The Defendant: No, Sir.
The Court: Are you pleading guilty of your own volition?
The Defendant: Yes, Sir.
The Court: Do you understand all of your Constitutional rights in both cases?
The Defendant: Yes, Sir.
The Court: Have you explained his Constitutional rights to him, Mr. Watson?
Mr. Watson: I have, Your Honor.
The Court: Several months ago you had a trial by a St. Louis County Jury and you were acquitted; do you remember that?
The Defendant: Yes, Sir.
The Court: You know what a trial by a jury is?
The Defendant: Yes, Sir.

The Court: If you plead guilty you are waiving your right to be tried by a St. Louis County Jury, do you understand that?
The Defendant: Yes, Sir.
The Court: If your case is tried you might win it or you might lose it, do you understand that?
The Defendant: Yes, Sir.

\* \* \* \* \* \*

"The Court: I will give you another chance to withdraw your plea. Do you want to plead guilty or do you want to withdraw it and have these cases tried by a St. Louis County Jury?
Mr. Watson: You can do what you want. If you want to try it, I will try it. Would you like more time? Would you like the Court to pass it until we get a definite answer on that tomorrow morning?
The Court: We will know that answer in the morning.
Mr. Watson: Do you want to think about it over night?
The Defendant: No; go ahead and plead.
The Court: You understand you can have this case tried by a Jury?
The Defendant: Yes, Sir.
The Court: And you want to go ahead and plead guilty?
The Defendant: Yes, Sir.
The Court: On your own?
The Defendant: Yes, Sir."