Earl William TOLER, Jr., Petitioner,

v.

Donald H. WYRICK, Respondent.

No. 77–47C(2).

United States District Court,
E. D. Missouri, E. D.

April 4, 1977.

Earl William Toler, Jr., pro se.

John D. Ashcroft, Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM

REGAN, District Judge.

Petitioner Earl William Toler, Jr., a Missouri state prisoner, pled guilty on January 20, 1975 in the Circuit Court of St. Louis County to two counts of robbery in the first degree with a dangerous and deadly weapon. He was sentenced to two concurrent terms of thirteen years imprisonment. Toler commenced this action *in forma pauperis* for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent Donald W. Wyrick, Warden, Missouri State Penitentiary, has filed copies of the state court records.

Petitioner alleges that his state imprisonment is unlawful, being in violation of the Constitution of the United States, because his guilty pleas were the products "of coercion and duress that resulted from the [state trial] court involving itself in plea discussions and passing judgment upon movant prior to any trial."

On October 2, 1975 petitioner filed a motion under Missouri Supreme Court Rule 27.26 to set aside these convictions upon the same allegations. The motion was denied without a hearing on October 7, 1975. On August 31, 1976 the denial of relief was affirmed on appeal. *Toler v. State of Missouri,* 542 S.W.2d 80 (Mo.App.1976). A motion for a rehearing and for transfer to the Supreme Court of Missouri was denied by the Court of Appeals on September 30, 1976. On November 8, 1976 the Supreme Court of Missouri denied a motion to transfer. Therefore, petitioner has exhausted all available state remedies, as required by 28 U.S.C. § 2254(b), (c).

██ Petitioner argues that the trial court's participation in the plea bargain process coerced him into pleading guilty. He argues that it was error for the Rule 27.26 trial court not to grant him a hearing on this allegation and he seeks a hearing in this Court. Of course, a federal habeascourt must grant an evidentiary hearing, if the facts are in dispute and the petitioner did not receive a full and fair evidentiary hearing in the state court. *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). A hearing is not required when the record of the state court proceedings is uncontested and provides all the necessary data for a satisfactory determination of the issues. *United States ex rel. McGrath v. LaVallee,* 319 F.2d 308, 312 (2nd Cir. 1963). Although it is his position that the participation of the state trial court in the plea bargaining was inherently coercive, he argues that the denial of a hearing precluded him from establishing his mental state at the time of the guilty plea. In his brief before the Missouri Court of Appeals, when making this argument, petitioner stated:

> The movant was not allowed to present any evidence in court or to testify himself as to his memory of the incidents complained of. He was not allowed a forum to express or establish his frame of mind at the time of the plea. The movant's entire contention rests on the question of whether or not he acted under duress. It is not enough that defendant at the time of the plea states that he is not under threats or being coerced. The fact that the defendant in open court states that the plea is not coerced does not foreclose inquiry as to its involuntariness. The movant was entitled to an evidentiary hearing and the denial of such a hearing was error. [Citations omitted.]

(Resp. Exh. C, 13).

██ As shown below, the resolution of petitioner's allegations hinges upon whether

or not his guilty pleas were made voluntarily. In a voluntariness determination the focus of attention is turned upon the subjective mind of the person making the guilty plea. *Griffith v. Wyrick,* 527 F.2d 109, 113 (8th Cir. 1975). This focus, however, is not so much influenced by a defendant's after the fact testimony concerning the state of his mind at the time of the plea as it is by an examination of those factors which allegedly made the plea involuntary. *United States ex rel. Robinson v. Housewright,* 525 F.2d 988, 991–992 (7th Cir. 1975); *Calabrese v. United States,* 507 F.2d 259, 260 (1st Cir. 1974); *Ford v. United States,* 418 F.2d 855, 858 (8th Cir. 1969).

■ Nowhere in the entire record of the state post-conviction proceedings and in the pleadings filed in this action does petitioner allege any facts relating to his guilty pleas which the denial of an evidentiary hearing prevented him from proving, other than his mental state at the time of the guilty pleas.

Petitioner's plea hearing transcript, quoted liberally below, indicates with apparent completeness all the plea bargain factors considered by the court, the prosecutor, and by petitioner when the pleas were entered. Petitioner has alleged the existence of no other conversations or representations to him which affected his decision to plead guilty. Therefore, the Court is of the opinion that the claim of involuntariness may be resolved without further evidentiary hearing.

Attached to the instant petition as an exhibit is a photocopy of the opinion in *United States v. Werker,* 535 F.2d 198 (2nd Cir. 1976). In *Werker* the Court of Appeals for the Second Circuit granted the United States a writ of mandamus which prevented the District Court from informing the defendant in a pending criminal action what sentence would be imposed, if he should plead guilty, prior to the actual entry of the plea. The writ was granted by the Court of Appeals in the exercise of its supervisory authority over the District Court. The Court was not only concerned with the possible adverse effect which the trial court's participation in the guilty plea might have upon the plea's voluntariness, but also with possible delays in the action while awaiting a pre-sentence investigation report and the possible need for substitution of judges should the defendant reject the plea bargain. In its procedural aspects and facts *Werker* is inapposite to the instant case.

■ It cannot be doubted that the influence of a trial judge in plea bargaining negotiations may have a profound effect upon the ability of the defendant to make a reasoned choice. *United States v. Tateo,* 214 F.Supp. 560, 567 (S.D.N.Y.1963); *United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y.1966). But not all judicial participation in plea bargaining is improper and causes a guilty plea to be involuntary. *United States ex rel. Robinson v. Housewright, supra,* at 991. The real issue is whether or not the plea was voluntarily made as indicated by its factual context. *Id.*

■ Petitioner argued before the Missouri Court of Appeals that from his colloquy with the state court judge he believed the judge had determined that the evidence and the seriousness of the offense were substantial, and that, if he did not plead guilty and stood trial, he faced a greater sentence than that for which he plea bargained (Resp. Exh. C, 8–11). The law is very clear that a guilty plea entered to avoid a possibly greater punishment is not by that very fact alone made involuntary. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Moore v. Swenson,* 487 F.2d 1020 (8th Cir. 1973); *Earin v. Beto,* 453 F.2d 376 (5th Cir. 1972), *cert. denied* 406 U.S. 909, 92 S.Ct. 1618, 31 L.Ed.2d 819 (1972).

In *Brady, supra,* defendant pleaded guilty to kidnapping to avoid the possibility of a jury verdict death penalty. Without a jury the maximum punishment was life imprisonment. Before accepting the plea the trial court twice inquired as to the voluntariness of the plea. The Supreme Court stated:

> The voluntariness of Brady's plea can be determined only by considering all of the

relevant circumstances surrounding it. One of these circumstances was the possibility of a heavier sentence following a guilty verdict after a trial. It may be that Brady, faced with a strong case against him and recognizing that •his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty. But even if we assume that Brady would not have pleaded guilty except for the death penalty provision of § 1201(a), this assumption merely identifies the penalty provision as a "but for" cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act.

397 U.S. at 749–750, 90 S.Ct. at 1469 (citations, footnote omitted). The court further stated that the plea must not be caused by mental coercion which overbears the will of the defendant, or by actual or threatened physical harm. *Id.* Brady was able with the aid of counsel to determine the advantages of trial against the advantages of a guilty plea. The following standard for the voluntariness of a guilty plea was stated:

> [A] plea of guilty entered by one fully aware of the direct consequences, *including the actual value of any commitments made to him by the court,* prosecutor or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Id.,* at 755, 90 S.Ct. at 1472 (emphasis added), quoting *Shelton v. United States,* 242 F.2d 101, at 115 (5th Cir. 1957). The court

further stated "Under this standard, a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." *Id.*

An examination of the plea hearing transcript shows that petitioner was informed by the trial court that each robbery charge carried a possible maximum penalty of life imprisonment and a minimum penalty of five years imprisonment. The court then stated the plea bargain agreement which had been reached between petitioner, his attorney, the prosecutor and the court:

> THE COURT: Because of plea negotiations between yourself, your lawyer, me and the Prosecuting Attorney, I am going to sentence you to two 14 year sentences and run them concurrent; do you understand that?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: You are not going to get the five year minimum or life imprisonment, but two 14 year sentences to run concurrent, do you understand that?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: You are also not going to get probation, do you understand that?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Do you understand you will be sentenced to the Missouri Department of Corrections?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: And knowing all of this in advance you want to enter a plea of guilty?
>
> THE DEFENDANT: Yes, Sir.

(Resp. Exh. B, 3). The court then questioned petitioner as to his age (25 years), his prior criminal record (two burglaries, grand larceny and possession of stolen shipment), and his current federal parole violator's status.[1]

---

1. Under questioning by the trial court petitioner acknowledged that his federal parole status had been revoked, requiring him to serve seven more months on a prior federal sentence. The court further stated that "Part of the plea negotiations are also, Mr. Watson [defense attorney], if we have any influence over Uncle Sam, we are going to try to get him released from the balance of the time still to serve at Gumbo,

which will be seven months, correct?" (Resp. Exh. B, 5). Following the acceptance of petitioner's guilty pleas and his sentencing, the trial court stated "If we hear in the morning the Federal Government will release you from the seven months you can take him up to the Missouri Department of Corrections in the morning." (Resp. Exh. B, 28). Included in the state court record is a letter from J. Alan Mac-

Petitioner was informed by the trial court that he would receive four months jail time credit on the state court sentence to be imposed. The court questioned petitioner as to his educational background (General Educational Development certificate), and further questioned him regarding the bargain as follows:

THE COURT: This case, as you know, is assigned out for trial; you wanted five years, the State wanted twenty and we have agreed and negotiated on this fourteen years. Has that been conveyed to you?

THE DEFENDANT: Yes, Sir.

THE COURT: Have any other promises been made to you other than no probation, fourteen years and possibility of getting you out of that seven month sentence; have any other promises been made to you?

THE DEFENDANT: No, Sir.

THE COURT: Have you had any disputes with Mr. Watson?

THE DEFENDANT: I have had no disputes. I would like to ask if I could be for parole?

THE COURT: I would say the answer to that is no because of the plea negotiations of fourteen years. I have cut the State six years and I have raised what you wanted a few years, and this is a sort of compromise between you, your lawyer and myself. I have sort of cut the State six years already. When you go to the Missouri Department of Corrections it is up to them to parole you when they want to. I do not know how long of this fourteen year sentence you will serve. We have a three-fourth Rule in Missouri. If you don't get into trouble it is up to them to parole you. I assume on a fourteen year sentence you will serve a substantial number of years before they parole you. Under the Law the Parole Board has the power to parole you the day you get up

there. Now, they are not going to do that. The minute you go to the Department of Corrections I lose jurisdiction of you. It is up to them. Do you know and understand that?

THE DEFENDANT: Yes, Sir.

(Resp. Exh. B, 7–8). The court then informed petitioner that with his criminal background the court would not consider giving petitioner probation. Whereupon the court admonished petitioner that he did not have to plead guilty if he did not so desire and recounted to petitioner his earlier trial and acquittal. The court then stated "I understand this case is a little stronger than the other case, but you might be acquitted; do you understand that?" (Resp. Exh. B, 8–9). The defendant answered affirmatively. The court again elicited petitioner's acceptance of the bargain:

THE COURT: And you will be tried under the Habitual Criminal Act. If this case were tried before a St. Louis County jury you might win it or you might lose it; do you understand that?

THE DEFENDANT: Yes, Sir.

THE COURT: If you win it you walk out a free man and all you would have to serve is the seven months you have been revoked on by Uncle Sam; do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you are convicted you might get more or you might get less than the fourteen years; do you understand that?

THE DEFENDANT: Yes.

THE COURT: And knowing all of this in advance, knowing you will not receive probation and knowing that you will receive fourteen years in the Missouri Department of Corrections, it is my understanding you want to plead guilty, is that right?

THE DEFENDANT: Yes.

(Resp. Exh. B, 9). The matter of a possibly greater sentence after a trial was discussed:

Doniels, U.S. Probation Officer, dated January 23, 1975 requesting the United States Board of Parole to withdraw its parole violator's warrant and to release petitioner to the state authorities

for service of his state sentence (Resp. Exh. B, 29). Petitioner makes no allegation that any plea bargain regarding his federal sentence was breached.

MR. WATSON: Your Honor, I have and he asked me if I would ask you, and I have been very reluctant, but he asked if he went to trial and the Jury found him guilty would the Court give him more time or would the fourteen years be the sentence.

THE COURT: Mr. Toler, I am aware of your record and the seriousness of this charge, guns and ski masks. I would order a pre-sentence investigation if a Jury found you guilty and I would decide then what time to give you. My off-hand judgment is that you would certainly get in excess of ten years; it could be more than fourteen years. You are in a bunch of trouble because this is a serious armed robbery and you have a bunch of prior felonies.

Your co-defendant got sixteen priors and the State wants forty years on him. I cannot promise whether you would get more or less than fourteen years. I don't know. I think this is probably a pretty fair plea negotiation because you have four prior felonies, you are on parole when you did this, plus these are loaded guns and number two, you are using ski masks.

Mr. Murphy [prosecutor], from the file, do you have a pretty good case against Mr. Toler?

MR. MURPHY: It is a very strong case. (Resp. Exh. B, 9–10).

The prosecutor then recounted what the State's evidence would show: A restaurant manager was robbed by two armed men in ski masks as he approached a bank night deposit box. Petitioner was apprehended a short time later in the getaway car after a chase. Two ski masks were found in the driveway where the car was stopped; two .38 caliber pistols and two wallets were found under a hedge at a nearby house. The bank deposit bag containing $635.06 was recovered unopened.

Petitioner then acknowledged his guilt to the court. The court stated "I would say offhand, Mr. Watson, the State has a pretty good case, particularly since they found the ski masks and the money." (Resp. Exh. B,

13). The court then informed petitioner that the United States Probation Officer stated he would recommend that petitioner be allowed to begin his state court sentence immediately. The court however warned petitioner that the federal authorities might not release him from the seven months imprisonment remaining on his sentence. Whereupon petitioner again affirmed his desire to plead guilty.

Under questioning by the court petitioner recounted the date of the offenses, their location, his involvement in the offenses, and other facts.

The court then asked petitioner if he understood all of his constitutional rights. Petitioner answered affirmatively. Defense counsel informed the court that he was prepared to try the case. The court then questioned petitioner regarding the basis for his guilty plea:

THE COURT: Is this your decision, Mr. Toler, or your lawyer's decision?

THE DEFENDANT: I am the one pleading, it is my decision but I am basing it on his theories of it.

MR. WATSON: And my negotiations.

THE DEFENDANT: Yes, it is my decision.

THE COURT: Mr. Toler, only you can make the decision, and your head is sort of between a rock and a hard place, plus the fact the State has a good case against you, but you do not have to plead guilty.

THE DEFENDANT: I understand that. (Resp. Exh. B, 18).

Under further questioning by the court petitioner stated that he did not use any type of drug; that nobody intimidated him, either physically or mentally, into pleading guilty; that nobody coerced him; and that he was pleading guilty of his own volition. The court questioned petitioner about his understanding of the rights that he would waive by pleading guilty, i. e. the right to trial by jury, the right to remain silent, the right to confront witnesses, and the right to compulsory process for witnesses in his own behalf. Again the court elicited the facts

of the offenses, and was informed by petitioner that he did not abuse alcohol or drugs. The court then questioned petitioner about his educational background, his ability to read and write, his mental state, and his criminal record. The defense attorney indicated that there was no known reason why petitioner did not understand what he was doing at this time.

The court then gave petitioner an opportunity to withdraw his plea. His attorney asked petitioner whether he wanted to think about the decision to plead overnight. The defendant answered negatively. Again the court informed petitioner of his right to a jury trial. The defendant affirmed that it was his desire to plead guilty. The court offered petitioner an opportunity to discuss the decision with his family. The petitioner refused this opportunity. At this time the court announced its decision to accept the pleas of guilty to the two counts of robbery in the first degree with a dangerous and deadly weapon.

[redacted] The transcript of the plea hearing in this case clearly indicates that petitioner's plea was voluntarily made, in spite of the judge's participation in the plea negotiations. The judge's participation in the bargaining was clearly acknowledged on the record. *Cf., United States ex rel. McGrath v. LaVallee, supra.* Although the court indicated that the State's evidence was substantial, it clearly advised the petitioner of the possibility that a jury might acquit him as had happened within recent memory. Although the court indicated its knowledge of petitioner's criminal background which was substantial, it did not inform him that, if he was found guilty after a trial, a greater sentence would be imposed than would be imposed if he pleaded guilty. The court remained noncommittal on this point.

The court clearly elicited a factual basis from petitioner that he was guilty of the offense charged. It repeatedly gave him opportunities to reconsider his plea. The record is abundantly clear that petitioner's plea was made voluntarily, as the extensive quotations from the transcript set out above indicate. The Missouri Court of Appeals so held.

[redacted] The participation of trial courts in plea bargain negotiations has been discouraged. *State of Missouri v. Tyler,* 440 S.W.2d 470 (Mo. *en banc* 1969); *United States v. Gallington,* 488 F.2d 637, 640 (8th Cir. 1974), *cert. denied* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974). *See also* Fed. R.Crim.Pro. 11(e)(1); *but see* Lambros, Plea Bargaining and the Sentencing Process, 53 F.R.D. 509. However, judicial participation does not require, without more, the setting aside of a guilty plea as involuntary. *United States ex rel. Elias v. McKendrick,* 439 F.2d 771, 773 (2nd Cir. 1971); *Brown v. Peyton,* 435 F.2d 1352, 1357 (4th Cir. 1970), *cert. denied* 406 U.S. 931, 92 S.Ct. 1785, 32 L.Ed.2d 133 (1972); *United States ex rel. Rosa v. Follette,* 395 F.2d 721, 725 (2nd Cir. 1968). The cardinal issue is whether or not the plea was made voluntarily given all the factors involved.

For the reasons set out above, the Court is of the opinion that no hearing is required by *Townsend v. Sain, supra,* and that petitioner's guilty pleas were made voluntarily. Therefore, an Order will issue dismissing the action with prejudice.