UNITED STATES, Appellee,

v.

Private First Class Jimmie R. CARUTH,
SSN 553–86–9757, United States
Army, Appellant.

CM 435756.

U. S. Army Court of Military Review.

8 March 1978.

Captain Lawrence M. Fuchs, JAGC, argued the cause for appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, and Captain D. David Hostler, JAGC.

Captain Jack M. Hartman, JAGC, argued the cause for appellee. With him on the brief were Lieutenant Colonel R. R. Boller, JAGC, and Major Michael B. Kennett, JAGC.

En banc.

## OPINION OF THE COURT

DeFORD, Judge:

The appellant, pursuant to his pleas, was convicted at a bench trial of possession and sale of heroin in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for eight months, forfeiture of $300.00 pay per month for eight months, and reduction to the lowest enlisted grade. The convening authority approved the sentence. Our review of the appellant's case is pursuant to Article 66, UCMJ.

The appellant alleges that his pleas of guilty are improvident because they were the products of coercion and duress that resulted from the military judge's involvement in the plea bargaining process; because of the ineffective assistance of counsel; and because his pleas were predicated upon a substantial misunderstanding of the maximum imposable sentence.

On 21 November 1976, the appellant was arrested for the illegal possession and sale of heroin. On 17 January 1977, the date the case was called for arraignment, the appellant, without the benefit of a pretrial agreement, entered guilty pleas to the charges. Appellant alleges that his decision to plead guilty was the result of an illegal pretrial agreement reached between the military judge and his detailed defense counsel. He alleges that this agreement required him to plead guilty at arraignment, and in return, the judge would sentence him to a bad-conduct discharge and eight months' confinement.

The trial defense counsel states in an affidavit that, a few days prior to the appellant's trial, he engaged in a discussion with the trial judge concerning the new sentencing practices the judge intended to adopt. He states that the trial judge told him that under his new sentencing policy, it was his intention not to impose more than a bad-conduct discharge and nine months' confinement for those accused who pleaded guilty at arraignment without a pretrial agreement with the convening authority. The counsel further states that the trial judge's avowed reasons for initiating this policy were because of the congested state of the trial court's docket, and because the trial judge's conclusion that guilty pleas predicated upon pretrial agreements with the convening authority were unsatisfactory due to the length of time it took to negotiate with the convening authority and to obtain his approval of the agreements.

Trial defense counsel also states that during the course of the discussion he questioned the trial judge as to what the judge generally believed was an appropriate sentence for the possession of heroin and the sale of heroin, assuming that an accused pleaded guilty. The trial judge allegedly opined that a bad-conduct discharge and six months' confinement, and a bad-conduct discharge and nine months' confinement, respectively, would probably be appropriate.

From his discussion with the trial judge, the trial defense counsel formed the belief that no agreements *per se* were being made with the trial judge and that the trial judge was legally free to adjudge a greater or lesser sentence as he deemed appropriate. However, trial defense counsel also formed the belief that based upon his association with the trial judge, and his knowledge of the trial judge's sentencing philosophy, the sentence which would be adjudged in the appellant's case would probably not exceed a bad-conduct discharge and nine months' confinement. The trial defense counsel did not believe that the trial judge would state that he was adopting a general sentencing policy which would limit one's sentence to nine months and a bad-conduct discharge for pleading guilty at arraignment without a pretrial agreement, and then sentence an accused who pleaded guilty at arraignment without a pretrial agreement to more than nine months' confinement and a bad-conduct discharge.

Following his conversation with the trial judge, trial defense counsel informed the appellant of what the trial judge had said

regarding the new sentencing policy. In relating this information to the appellant, trial defense counsel stressed that the trial judge was legally free to impose a greater sentence, and that, in essence, the appellant was throwing himself upon the mercy of the court. However, trial defense counsel also stated that, although there was no guarantee from the trial judge, he was reasonably certain that the appellant's sentence would not exceed a bad-conduct discharge and nine months' confinement.

In concluding his affidavit, trial defense counsel states that his advice to the appellant to plead guilty was predicated upon his evaluation of the evidence against the appellant and was not a result of his discussion with the trial judge. Trial defense counsel also states that he had arrived at this decision well before his conversation with the trial judge, and as a result, had earlier advised the appellant to seek a pretrial agreement with the convening authority.

In his affidavit, the trial judge does not address and consequently refute trial defense counsel's account of what occurred. He does state without reference to the appellant's case, that he had never discussed a specific case with any attorney, and that any and all out-of-court discussions between himself and counsel were concerning general principles of law or were philosophical in nature.

Since there is no real disagreement as to what was said in the conversation between the trial defense counsel and the trial judge, we will decide the assigned errors without resorting to a limited rehearing. In resolving the appellant's first contention, we assume, without deciding, that the result of the trial judge's conversation with trial defense counsel was the perception on the part of trial defense counsel of a tacit limitation on sentencing when an accused enters an unqualified guilty plea.[1]

We cannot ignore the fact that a trial judge's influence in plea bargaining negotiations may have a profound effect upon the ability of an accused to make a reasoned choice. *United States v. Werker,* 535 F.2d 198 (2d Cir. 1976); *United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244 (A.D., N.Y.1966). However, not all judicial participation in plea bargaining is improper or causes a guilty plea to be improvident. *United States ex rel. Robinson v. Housewright,* 525 F.2d 988 (7th Cir. 1975); *Toler v. Wyrick,* 430 F.Supp. 545 (E.D.Mo.1977). Thus, the crucial issue to be resolved is whether, under the facts of the case, the plea was voluntarily entered. *United States ex rel. Robinson v. Housewright, supra.*

Using the above authorities as a touchstone, we are of the opinion that the trial judge's comments concerning his sentencing philosophy were not applicable to any particular pending case and their impact on this case did not cause the appellant's plea to be involuntary. Initially, we note that the evidence against the appellant was overwhelming. He was arrested immediately after a controlled buy of heroin with a marked twenty-dollar bill in his possession. As trial defense counsel states in his affidavit, it was the evidence against the appellant, and not any discussion with the trial judge, that prompted him to initially advise the appellant to plead guilty.

Moreover, the appellant's case *per se* was not discussed with the trial judge prior to trial. Consequently, it is extremely unlikely for the judge's involvement to have been such that it precluded him from making an objective determination of the voluntariness of the appellant's plea, or that it induced the appellant to plead guilty when he desired to do otherwise.[2] Also, as the appellant's crimes were not complex, and in

---

1. We find the dictates of *United States v. Green,* 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976), and *United States v. King,* 3 M.J. 458 (C.M.A.1977), to be inapplicable to the present case as we find as a matter of fact, that a pretrial agreement was not consummated in this case.

2. In none of the documents filed before this Court has the appellant alleged that he desired to plead not guilty at trial.

view of the fact that he was not arraigned until almost two months after his arrest and one month after the completion of the Article 32 investigation, we are of the opinion that trial defense counsel had sufficient time to investigate the charges against the appellant and to generally prepare appellant's case for trial. Thus, his advice to the appellant to plead guilty was sound and practical under the circumstances.

■ Finally, at the time of his *ex parte* discussion with the trial judge, trial defense counsel intended to or was in the process of negotiating a pretrial agreement. This indicates to us that the appellant always intended to plead guilty; it was just a question of first obtaining a favorable limitation on sentence.[3] Consequently, the fact that the appellant entered his guilty plea to avoid a possibly greater punishment does not alone make his plea involuntary.[4] *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Moore v. Swenson,* 487 F.2d 1020 (8th Cir. 1973). As the Court in *Brady* stated at page 755, 90 S.Ct. at page 1472:

> " '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g., bribes).' "

Utilizing this standard and the guidelines enunciated in *Robinson v. Housewright* and *Toler v. Wyrick,* both *supra,* we conclude

that the military judge's participation, such as it may have been, did not coerce the appellant into pleading guilty.[5] Therefore, from that aspect, we find the appellant's plea to have been providently entered.

■ The appellant's second contention is that his plea is improvident because he was denied effective assistance of counsel by reason of the fact that his counsel chose to plead him guilty when his counsel knew that a bad-conduct discharge would be imposed as part of the sentence, and because his counsel failed to present favorable evidence during the presentencing portion of the trial. Our reading of trial defense counsel's affidavit indicates to us that he was under the impression that the appellant's sentence would probably not "exceed" nine months' confinement at hard labor and a bad-conduct discharge. No where does he state that he knew with certainty that the trial judge intended to sentence the appellant to a bad-conduct discharge. Counsel's opinion of the probable results of trial is always a factor in the form of his advice to his client. Counsel is required to be realistic. The fact that appellant's trial defense counsel believed a bad-conduct discharge would probably be adjudged in this case only exemplifies that he possessed a realistic view of the possible consequences of appellant's act. We believe such views were warranted under the facts of this case notwithstanding any possible objective and subjective manifestations concerning sentence by the military judge.

■ Turning to the remaining aspect of the appellant's contention, we agree that his defense counsel was remiss in not presenting certain favorable evidence dur-

---

**3.** Trial defense counsel's principal concern and responsibility was to obtain the lightest possible sentence for his client. His advice to his client was designed to achieve that result.

**4.** In his affidavit, trial defense counsel states that in heroin possession cases, the convening authority usually agreed to disapprove that part of the sentence adjudged which was in excess of a dishonorable discharge and 12 to 13 months confinement; for heroin sale cases, it was that part of the sentence adjudged which

was in excess of a dishonorable discharge and 18 to 24 months confinement.

**5.** Although we have determined that the military judge's statements in this case did not affect the appellant's plea, we would caution all trial judges that this practice is fraught with danger and should be avoided. *See* American Bar Association Standards, Pleas of Guilty, Section 3.3(a) (1968). *See also United States v. Werker,* 535 F.2d 198 (2d Cir. 1976).

ing extenuation and mitigation.[6] This failure, though, does not affect the providency of the appellant's plea. *United States v. Brooks*, 19 U.S.C.M.A. 35, 41 C.M.R. 35 (1969). We will reassess the sentence in order to purge any possible prejudice which may have resulted from this omission.

■ The appellant's final allegation of error is that his plea is improvident because it was predicated upon a substantial misunderstanding of the maximum imposable sentence. The record shows that prior to entering his pleas, and during the providency inquiry itself, the appellant was aware of the fact that the maximum imposable sentence to confinement could be two years instead of ten. After much discussion on the issue, the military judge asked the appellant:

> Now, even though the confinement portion is up in the air, are you still willing to plead guilty because you are guilty?

The appellant responded in the affirmative.

From these facts, it is obvious that the appellant was still willing to plead guilty without regard to the ultimate decision as to the legal maximum confinement. Under these circumstances, he cannot now reasonably argue that he entered into his pleas of guilty while suffering under a substantial misunderstanding of the maximum imposable sentence. *United States v. Frangoules*, 24 U.S.C.M.A. 317, 52 C.M.R. 28, 1 M.J. 467 (1976). However, because the military judge imposed sentence based upon the ten year confinement maximum instead of the two year limitation, *United States v. Jackson*, 3 M.J. 101 (C.M.A.1977), we will reassess the sentence. *United States v. Frangoules, supra.*

The findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated errors and the entire record, the sentence is affirmed. Under the circumstances of this case the sentence adjudged was appropriate for the offenses committed. We do not believe the misunderstanding as to punishment affected the sentence imposed.

Chief Judge CLAUSEN, Senior Judges CARNE, JONES and CLAUSE, and Judges MITCHELL, DRIBBEN, and TALIAFERRO, concur.

Judge FELDER concurs in the result.

FULTON, Senior Judge, dissenting:

I dissent, for I regard the practice adopted by the military trial judge as inherently prejudicial.

Presumably, every defendant who pleads guilty has some expectation, even without a plea agreement, concerning the outcome, whether based on the known or assumed predilictions of the judge or on other factors. If there is no plea agreement, the law does not require that the defendant's expectation be inquired into (although that would seem necessary if the goal is to assure that the plea is truly provident). This case, however, is not one in which an attorney's empirical observation of judicial behavior led him to counsel his client to a particular course of action. Instead, the trial judge made what was tantamount to an announcement that was calculated to, and did, arouse specific expectations on the part of the defense even though there was no plea agreement in the usual sense of that term.[1]

---

**6.** Subsequent to the appellant's arrest, he furnished the military authorities with information concerning other drug sellers and users in the battalion. Whether the failure to present the foregoing evidence to the court was the result of a tactical decision, or simply due to inadvertence, we cannot determine. However, it does serve to highlight one of the dangers associated with a trial judge's participation in the plea bargaining process, *viz.*, the possible failure of the trial defense counsel to present favorable extenuation and mitigation evidence because of his belief that it would be a futile effort since

the judge has already determined what he believes to be an appropriate sentence for the offense(s). *See* footnote 5, *supra*.

**1.** The Court has chosen to exercise its fact-finding authority through the use of affidavits rather than by means of an adversary evidentiary hearing. Even supposing a tendency of affiants to be self-serving, however, I agree that there was no plea agreement within the meaning of *United States v. Green*, 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976). Also, I do not believe that the accused thought that the

In the conversations evidenced by the affidavits filed before this Court, the trial judge came perilously close to involving himself in plea discussions in a manner frowned upon by the American Bar Association.[2] Also, discussions of the type involved appear to constitute the "*ex parte* . . . communications concerning a pending or impending proceeding", condemned in the Code of Judicial Conduct.[3]

There are, however, more definite reasons why the practice adopted bears the seeds of prejudice to an accused. One of them stems from limitations on the powers of military trial judges. Only convening authorities, not military judges, may suspend sentences and place convicted persons in a probationary status.[4] Therefore, if an accused wants a plea agreement that includes suspending all or any part of the sentence, the negotiations necessarily must be with the convening authority.[5] In my view, canting the military judicial process

so as to deter negotiating with the convening authority, thereby foreclosing those options that are only within the latter's power, is error. I would order a rehearing to preserve the integrity of the military justice system and to purge the proceedings of any potential prejudice.[6]

Second, the practice announced and plainly followed [7] by the military judge gives rise to doubts about the fairness of the sentencing process. It often is urged that an accused who spares the Government and its witnesses the time and expense of a contested trial (which also expedites the trial of others) is entitled to some leniency for that reason.[8] It is not appropriate, however, that expediting the trial should be made to loom larger in the sentencing process than those factors relating to the individual accused and the circumstances surrounding his offense.[9] That practice clearly is inconsistent with the goal of individualized sentencing.[10]

judge was legally limited to any particular sentence.

2. ABA Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty, § 3.3(a) with commentary at 72–74 (Approved Draft, 1968); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge, § 4.1 with commentary at 52–60 (Approved Draft, 1972).

3. ABA Special Committee on Standards of Judicial Conduct, Code of Judicial Conduct, Canon 3, Standard A(4) (1972). For Army adoption of the Code and some ABA standards, *see* Army Regulation 27–10, para. 2–32 (26 Nov. 1968, as changed).

4. *See United States v. Occhi,* 25 U.S.C.M.A. 93, 54 C.M.R. 93, 2 M.J. 60 (1976).

5. The convening authority may also retain an enlisted person in a higher pay grade when otherwise the approved sentence would by operation of law reduce the accused to the lowest pay grade. Army Regulation 600–200, para. 7–64a (4) (24 Mar. 1965, as changed).

6. As the majority opinion states, the defense initially intended to negotiate a plea agreement with the convening authority. There is no way for us to know what the result might have been. (Neither do we know what the prosecution's position might have been, for the judge's practice effectively eliminated any advisory role for either the prosecution or the staff judge advocate.)

7. The uniformity of sentences over the ensuing six months confirms the practice. Beginning with the appellant's trial, the average sentence imposed by the judge on accused pleading guilty at the arraignment session without having negotiated an agreement included a bad-conduct discharge and 8.8 months' confinement. Indeed, more than one-half of such accused (17 of 33) received exactly 9 months' confinement.

8. It also is said that admitting guilt, as by pleading guilty, is a significant step towards rehabilitation and deserves consideration in sentencing. Perhaps so, but it is possible to make a guilty plea so attractive on other grounds that contriteness cannot be assumed.

9. The evident uniformity of sentences was mentioned in note 7, *supra.* The affidavits of counsel indicate that there was no pretrial discussion of extenuating or mitigating matters.

10. *See United States v. Varacalle,* 4 M.J. 181 (C.M.A.1978), over-ruling *United States v. Mosely,* 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976), but affirming the principle of individualized sentencing. As the majority opinion notes, some possibly favorable evidence concerning the appellant was not introduced in the presentencing proceedings. We do not know why. Neither do we know whether any other evidence might have been introduced had there been a full and individualized sentence consideration. Only a rehearing on the sentence can cure this deficiency.

Accordingly, I would set aside the findings and the sentence, and would authorize a rehearing before a court to which a different military judge has been appointed.

FELDER, Judge, concurring in the result:

I agree with the analysis of Senior Judge Fulton but I concur in the result of the majority because no prejudice was demonstrated. Article 59(a), Uniform Code of Military Justice.

COOK, Judge, dissenting:

I concur in Senior Judge Fulton's disposition of this case and agree with many of the views he expresses in his opinion. Because I believe that there is a more fundamental and egregious error than that relied upon by Senior Judge Fulton, I am submitting my conclusions separately.

I

I would set aside the findings in this case and authorize a rehearing because the trial judge manifestly failed to comply with the mandate of *United States v. Green,* 24 U.S. C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976). In establishing the rule in that case, the Court stated ". . . that as part of all *Care*[1] inquiries conducted 30 days or more after the date of this opinion,[2] *the trial judge shall ascertain whether a plea bargain exists . . .*"[3] *Id.* at 302, 52 C.M.R. at 13, 1 M.J. at 456 (emphasis added). The government counsel concede that the trial judge was required to inquire about the existence of a pretrial agreement and that he failed to do so. My reading of the law and the record confirms the accuracy of that concession.

Those who would sustain this case in spite of this omission by the trial judge assert that since there was no pretrial agreement the judge's failure to inquire after one can not be prejudicial. This contention suffers, in my view, from the same flaw contained in the argument of the majority in *United States v. Crowley,* 3 M.J. 988 (A.C.M.R.1977) (*En Banc*), *reversed* 4 M.J. 170 (C.M.A.1977), *request for reconsideration granted* 9 Feb. 1978.

As I read the *Green* decision, the United States Court of Military Appeals has prescribed certain areas of inquiry which must be explored by the trial judge, and "set forth *on the record*"[4] before he is authorized to accept a guilty plea.[5] The United States Court of Military Appeals declared in *Green* that ". . . a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge *first* determines that it has been voluntarily and providently made." *Id.* at 302, 52 C.M.R. at 13, 1 M.J. at 456 (1976) (emphasis supplied). In the case of *United States v. King,* 3 M.J. 458 (C.M.A.1977), the trial judge failed to inquire of the counsel as to whether the written agreement encompassed all of the understanding of the parties, an inquiry also stipulated by the *Green* opinion. The government counsel urged the United States Court of Military Appeals that it ". . . should not, absent a showing of a *sub rosa* agreement, declare a plea improvident because of a failure by the trial judge to strictly follow the procedure set forth in *Green.*" Those facts and that argument appear to me to be analogous to those in the case *sub judice.*

---

1. 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

2. The date of the *Green* opinion was 13 August 1976. This case was tried and the *Care* inquiry conducted on 17 January 1977.

3. The requirement for such an inquiry did not originate with the *Green* decision. *See* paragraph 3–1, page 304, Military Judges Guide, DA Pam 27–9, 19 May 1969, as changed by C–2, dated 14 May 1970. Nor is it unique to the military justice system. *See* Rule 11(d), Fed.Rules Cr.Proc., 18 U.S.C.A.

4. *United States v. King,* 3 M.J. 458 (C.M.A. 1977) (emphasis in the original).

5. This absolutist approach is not dissimilar to the one dictated by the United States Court of Military Appeals earlier in *United States v. Care, supra,* and the U. S. Supreme Court in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

In response to the government's entreaty, the United States Court of Military Appeals said:

"This is unacceptable because it ignores the basic policies behind *Green* of requiring the trial judiciary to actively participate in and prepare a record for appellate authorities which satisfactorily demonstrates the absence of such agreements. . . .[6] [W]e believe that the whole purpose of *Green,* as set forth earlier in this opinion, is thwarted unless its terms are strictly adhered to, . . ." *United States v. King,* 3 M.J. at 459.

I believe the same observations are idoneous to the instant case and I would, therefore, reverse.

## II

Even if this case did not suffer from the foregoing error, I would still be unable to approve it. I am convinced that there was in fact a pretrial agreement between the trial judge and the trial defense counsel.[7] Because the terms of that agreement were not spread upon the record in open court as required by the *Green* opinion, I would set aside the findings and sentence in this case and authorize a rehearing.

I am persuaded of the presence of an agreement by the uncustomary conduct of counsel and the trial judge in the case *sub judice,* and by the unique occurrences in other guilty plea cases tried by this same trial judge in this same jurisdiction.

## A

The factors present in this record of trial which I find disturbingly unusual are several. The defense counsel pled his client guilty to charges which exposed him to the imposition of a possible maximum of a dishonorable discharge and confinement at hard labor for ten years with accessory punishments. This plea was entered without the benefit and protection of a pretrial agreement.[8] During the presentencing portion of the trial, which presumably is the stage at which the defense makes every effort to minimize the severity of the sentence, the accused took the stand and in response to some nine questions posed by his counsel made a very perfunctory presentation. Defense counsel's argument on sentence consisted of 63 words and contained not a single allusion to the unusual fact that the appellant had no pretrial agreement and was therefore relying on the mercy of the court. The trial judge imposed a sentence which included *inter alia* a bad-conduct discharge and eight months' confinement. Whatever other observations may be appropriate concerning counsel's conduct in this regard,[9] it evidences, to me, that the defense counsel was convinced beyond a modicum of a doubt of the maximum sentence the trial judge would impose. As this was the initial case in a series of cases I will describe later, the source of counsel's certitude in this case had to be promises originating from the military judge himself.

---

6. Ironically, had the trial judge in the instant case asked the required question of counsel, in the presence of the appellant, at trial, perhaps we would not have found it necessary to try to answer it on appeal. This of course, is one of the problems the *Green* inquiry was designed to eliminate.

7. A pretrial agreement is not, in my view, defined as one limited to an agreement between an accused and a convening authority. Nor does a pretrial agreement have to be reduced to a particular stylized form. Such an agreement, as in any other factual context, may be arrived at by "an arrangement as between two or more parties as to a course of action." Page 43, Webster's Third New International Dictionary. Also, an agreement may be said to exist even if it is conditional in nature. A conditional agreement is one in which the agreement's operation and effect depend upon the existence of a supposed state of facts, or the performance of a condition, or the happening of a contingency. Page 89, Black's Law Dictionary (4th ed.).

8. For an example of how this fact can be construed so as to render provident what otherwise might be an improvident plea *see United States v. Castrillon-Moreno,* 3 M.J. 894 (A.C.M.R.1977), a case which incidentally was tried before this same judge on 4 February 1977.

9. *See United States v. Welker,* 3 U.S.C.M.A. 647, 25 C.M.R. 151 (1958).

## B

While the facts in this case might be accounted for as an aberration, an examination of other guilty plea cases heard by this judge bring the picture into focus. The affidavits and other exhibits submitted to, or otherwise before, this Court persuade me that the judge in this case had informed the counsel in the jurisdiction in which this trial was conducted that in order to expedite the disposition of cases he was instituting a new practice in his court. The terms of that practice were that any accused who pled guilty at arraignment, and without a pretrial agreement with the convening authority, would not, irrespective of the seriousness of the charges against him, receive a sentence in excess of a dishonorable discharge and one year's confinement along with accessory punishments. This policy was announced before the trial of the case *sub judice* on 17 January 1977, and continued into June 1977, at least. I base my conclusion largely on a statistical study which reveals that in the general court-martial guilty plea cases heard by this judge in this jurisdiction on and after 17 January 1977, there was a dramatic change from former practices.

First, the duration of the period of confinement and the severity of the punitive discharges he imposed were markedly reduced. In the 35 guilty plea cases this judge sat on immediately prior to 17 January 1977 his average sentence to confinement was five years and he imposed dishonorable discharges in 29 of them. Whereas, after that date, in the 39 cases wherein the accused pled guilty without a pretrial agreement his average sentence to confinement was only eight months and he imposed a dishonorable discharge in just four of them. He exceeded a one year sentence to confinement in such a case in only one instance, early after the policy had been activated, and that was in a case in which the accused failed to enter his guilty plea at arraignment. The judge never imposed so harsh a punishment for such a lapse in any subsequent case. However, there were five accused who appeared before the judge to plead guilty during this period who had negotiated pretrial agreements and they received an average of seven years confinement, with all but one receiving a dishonorable discharge.[10]

Secondly, a conspicuous change occurred in the number of pretrial agreements nego-

**10.** Actually there were six accused who entered guilty pleas with pretrial agreements after 17 January 1977, but, as will be noted later, one was reduced to the proportions of a regular special court-martial and thus not included with the general court-martial here under discussion. Lest it be thought that the fact that there were six such negotiations undermines the view that there was a firm understanding between the judge and counsel, as I earlier described, I submit the following observations as to those six. In four of them, civilian defense counsel was involved. In my opinion, such counsel either did not know of the arrangement or did not have faith in it. (However, Mr. Bellen, a civilian counsel, on 3 March 1977, represented three of these accused who appeared with pretrial agreements. Each was facing a maximum of ten years confinement. One received the maximum while the other two received eight years apiece. When Mr. Bellen returned on 22 April 1977, he did not negotiate a pretrial agreement for a client facing a maximum of 35 years confinement. I surmise that he had learned of the prevailing arrangement in the interim. This client received a bad-conduct discharge, 10 months confinement, total forfeitures and reduction to E–1.) Another case in which counsel opted for a pretrial agreement

prior to submitting his plea was one in which he was able to get a deal with the convening authority substantially less than the ongoing agreement with the judge, *i. e.*, the convening authority agreed to suspend all parts of the sentence in excess of a bad-conduct discharge. Thus, he had little to fear by breaching the terms of the arrangement. The sixth case was another one in which counsel was able to make an agreement substantially more favorable than the judge's offer. The accused was charged with an aggravated assault, but was permitted to plead guilty to simple assault with the Government agreeing not to present evidence on the more serious offense. Thus the maximum sentence was limited to that of a regular special court-martial, or well below the prevailing arrangement. Nevertheless, this case presents an illustrative vehicle to establish how the arrangement actually operated. The accused in this case was sentenced by the judge to four months confinement and $150.00 per month for four months. A coaccused, who was tried later on the same day, and was charged with, and pled guilty to, the aggravated assault, without a pretrial agreement, and thus faced a maximum sentence which included a dishonorable discharge and confinement at hard labor for three years, was sentenced by

tiated in this command during this same period. Prior to 17 January 1977, all but one of the 35 guilty plea cases this judge heard involved pretrial agreements.[11] After that date only six of 45 accused who entered guilty pleas had negotiated such agreements. In my view this is an especially incriminating fact. As we are all well aware, the negotiated plea, including as it usually does a promise by the convening authority to approve a sentence appreciably less than that prescribed by the table of maximum punishments,[12] is an invaluable and almost universally used device resorted to by accused in the Army who wish to plead guilty. It is a rare instance in the military justice system when an accused pleads guilty at a general court-martial without such an agreement. Yet, suddenly, on and after 17 January 1977, such agreements almost fell into total disuse in this judge's jurisdiction. We need not wonder why. It was obviously because the judge had guaranteed an exceedingly lenient sentence. I use the word "guaranteed" advisedly, because I do not believe so many defense counsels and clients would have entered guilty pleas, as did, in cases in which the maximum permissible confinement was 20 and 10 years without an understanding that amounted to a guarantee concerning the maximum sentence that would be imposed. I am resolved in this conclusion when I note one instance in which Mr. Bellen, an experienced criminal lawyer, foresook a pretrial agreement in a case involving a possible maximum term of confinement of 35 years. My personal experience with, and knowledge of, Mr. Bellen leads me to the inescapable conclusion that he would not have pled his client guilty unless he was assured to a moral certainty of the maximum sentence the judge intend-

ed to impose. Neither he, nor any other responsible attorney, would expose a client to the possibility of a severe sentence, especially when the shield of a pretrial agreement is readily available, unless they had secured a suitable and certain alternative. I do not believe Mr. Bellen did, nor do I believe counsel in any of the other post 17 January cases did either.

### C

Having satisfied myself that the trial judge, to all intents and purposes, entered into a pretrial agreement concerning the maximum sentence he would impose, the next question to be answered is "What is the legal impact of such conduct?"

Both the Federal Rules of Criminal Procedure and the ABA Standards Relating to Pleas of Guilty [13] admonish judges not to participate in such pretrial agreements. However, I do not deem it necessary to rely on such injunctions as a basis for my decision. As I noted at the outset of my discussion on this point, it is beyond cavil, in my view, that any such agreement, as I find did exist in this case, must be spread upon the record in accordance with the clear mandate of *United States v. Green, supra,* and *United States v. King, supra.* Consequently, on this ground too, I would reverse this case and order a rehearing.

MOUNTS, Judge, dissenting:

In my opinion a limited rehearing should have been held in this case in order to more carefully ascertain the valid basic facts which give rise to the possible legal issues. This case may contain unresolved due process and ethical questions. The affidavits upon which this Court appears to rely do

---

the judge to a restriction for 30 days, forfeiture of $75.00 per month for three months and reduction.

**11.** The last guilty plea case heard by this judge, prior to the instant case, in which the plea was entered without a pretrial agreement, was on 9 November 1976. He imposed a sentence which included a bad-conduct discharge and three years confinement. Obviously this prior precedent did not provide the assurance or inspira-

tion for the trial defense counsel in the case *sub judice* to plead his client guilty without a pretrial agreement with the convening authority.

**12.** Paragraph 127c, MCM, 1969 (Rev.).

**13.** Rule 11(e), Fed.Rules Cr.Proc., 18 U.S.C.A.; Section 3.3(a), Standards Relating to Pleas of Guilty, ABA, the commentary to which sets out at some length the reasons why.

not fully provide a sound factual basis upon which to answer these potential legal questions. We should not use affidavits, under these circumstances, to infer the regularity of the procedure in favor of the Government. This case has potential precedent value in a series of other cases tried by the same military judge. We should take the time to test the allegations against facts obtained in an adversary evidentiary hearing. The results of such a hearing may further support the contentions of the majority. Nevertheless, by using this procedure, we would insure that the accused is not denied his basic right of confrontation in an area where an inference or presumption against his interests may effectively terminate the real value of his appellate rights.