UNITED STATES, Appellee,

v.

Specialist Four David A. ONAN, SSN
304–56–8985, United States
Army, Appellant.

CM 436541.

U. S. Army Court of Military Review.

24 April 1978.

Captain Paul T. Allen, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, and Captain Carlos A. Vallecillo, JAGC.

Captain Paul W. Jacobson, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel R. R. Boller, JAGC, and Captain Laurence M. Huffman, JAGC.

Before CLAUSEN, CARNE and COOK, Appellate Military Judges.

## OPINION OF THE COURT

CLAUSEN, Chief Judge:

Appellant was arraigned at an Article 39(a)[1] session held on 13 July 1977, at

---

1. Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a).

which time he entered pleas of not guilty to the charges against him. The trial was then recessed until 9 August 1977. At the resumed session of the trial, the military judge asked whether the defense counsel had gone over with his client all of his rights. The defense counsel responded in the affirmative and then offered Appellate Exhibit III, a document captioned, "Rights Understanding." This document is the first of three forms which were stipulated into evidence, whose use appellant now contends deprived him of a fair trial. Appellate Exhibit III was the only challenged form to be offered while the proceedings were in the posture of a contested case and by its language is descriptive of the rights enjoyed by accused persons in both contested and uncontested cases.[2]

After receipt of this form, the military judge noted that the case was contested and stated, "So today we can proceed to evidence." At this point, the defense counsel announced that appellant desired to change his plea and, speaking for appellant, entered pleas of guilty to the Charge and specifications. The military judge questioned appellant and both counsel in detail as to whether there was a guilty plea agreement in the case. All parties responded in the negative and the defense counsel offered Appellate Exhibit IV, a form captioned, "Stipulation Showing Lack of Pretrial Agreement."[3] This is the second form about which appellant now complains.

The military judge then began his inquiry into the providence of the plea by describing the rights which appellant waived by a plea of guilty. After appellant expressed his desire to waive his rights, the defense counsel stated that "at this time perhaps it would be appropriate to introduce a document encompassing many of the things you have just gone over with the accused." The defense counsel then introduced Appellate Exhibit V, captioned, "Waiver of Rights in Guilty Plea Cases," the third of the challenged forms to be used during the trial.[4]

2. The "Rights Understanding" form contains recitals that the accused understands his rights to counsel and describes various procedural aspects of military law, including his options as to trial by a court with members or by judge alone, his rights in extenuation and mitigation, and certain of his appellate rights. Appellant specifically complains of the following provisions of this form:

Whenever I do not raise any complaint before the military judge of which I have knowledge, I understand by my silence that I forever waive and give up any such complaint which I might have;

(i) I understand that . . . if I have evidence which I do not use [during my trial], I am forever barred in the future from using that evidence.

3. This exhibit, unlike the other two involved in this case, was typewritten and was not a preprinted form. After stating that no pretrial agreements of any sort were in effect, the stipulation continued:

Both sides stipulate that the facts contained in this stipulation of fact are conclusively determined; no appellate authorities shall seek to go behind these facts; and no affidavits, letters, or any other extra-record matters made subsequent to the date of this stipulation shall ever be used to contradict the terms and facts contained in this stipulation of fact.

4. The waiver of rights form contains the following language:

g) I know that I have the following rights, and consciously, intelligently and voluntarily give them up forever knowing that a waiver means these rights which follow vanish, they disappear, they can never be exercised by me again, and that they are exhausted:

I hereby give up forever my right against self-incrimination, that is the right to say nothing at all;

.   .   .   .   .

I hereby give up forever some of my appellate rights. I understand that the appellate courts have held in decisional law that a plea of guilty waives and gives up certain motions and certain objections to evidence;

I hereby give up forever any motion to suppress any evidence;

I hereby give up forever any motion to suppress any pretrial statements;

I hereby disavow all defenses of any nature. I have discussed all possible defenses with my trial defense attorney, I understand them, and I consciously, intelligently and voluntarily disavow each and every one of them.

Thereafter, the military judge completed the *Care*[5] inquiry, accepted appellant's pleas as provident, and entered findings of guilty.

Appellant now asserts that, inasmuch as the trial defense counsel had prepared these forms prior to trial, we should infer that appellant was required to execute these waivers and stipulations as conditions of his pleas of guilty.[6] He contends that these documents not only contain provisions that are themselves erroneous and unfair, but also amount to a *de facto* pretrial agreement between appellant and the military judge.

■ Dealing with the last contention first, we disagree with the contention that there was a *de facto* pretrial agreement in effect in this case. All parties to the trial stated on the record that no agreements of any kind existed in the case, and the trial defense counsel stated that he had had no discussions with the military judge concerning possible sentences or other aspects of the case. Finally, appellant stated that he understood that he could be sentenced to the maximum punishment. There is no evidence before this Court suggesting that any of these on-the-record statements were in fact untrue, and appellant concedes that the record does not demonstrate that his failure to sign these forms would have caused the military judge to reject his pleas. While it is conceivable that the military judge anticipated or desired the use of the forms in question, we have found no indications that the military judge required their use or conferred any benefit on appellant as a result. This Court understands that an independent judicial officer, striving to insure that accused persons understand their rights, may evolve certain procedures aimed at attaining that goal. Although a judge may inform counsel that he expects the devised procedure to be followed, and while counsel who appear before that judge on a daily basis may become accustomed to following that procedure is a matter of routine, the procedure does not rise to the level of a pretrial agreement unless it appears that its use has become a condition precedent to receipt of some benefit by the accused.

Although we decide that there was no *de facto* pretrial agreement in the case at bar, we must also resolve the issue of whether appellant was deprived of a fair trial or a meaningful appeal by use of the forms in question. The challenged provisions of the exhibits in question fall generally into two categories: statements purporting to restrict the posttrial use of evidence in connection with matters which could have been litigated at trial; and statements that appellant's guilty pleas waived certain procedural and substantive rights.

■ With regard to the first category, the review of records of trial by this Court requires the weighing of the evidence and a determination of whether the accused's guilt has been established beyond a reasonable doubt. *See* Article 66, UCMJ. Although this review is normally limited to matters contained within the record,[7] there may be instances when we must consider factual allegations submitted by the parties after the trial. Whenever it would be appropriate and legally permissible for us to consider affidavits or other matters from outside the record of trial, it is not permissible for the parties to seek to limit our consideration of such matters. Accordingly, to the extent that any provision of Appellate Exhibits III, IV or V attempts to

---

5. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

6. Counsel have not addressed the fact that Appellate Exhibit III was introduced while the proceedings at trial were in the posture of a contested case.

7. *United States v. Bethea*, 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973).

restrict the submission by the parties or use by this Court of matters otherwise properly admissible, they are hereby declared void. Likewise, any attempt to prevent this Court from, in an appropriate case, "going behind" stipulated facts is a nullity.

■ We decide, however, that there has been no prejudice caused to appellant by these invalid provisions. The tenor of the challenged language was not to prevent appellant ever from raising complaints or presenting evidence, but to encourage him to do so on the record at trial. Appellant does not contend that he has been prevented from submitting any such matters, either at trial or on appeal. Indeed, appellant has asserted the existence of a *de facto* pretrial agreement, contrary to the terms of Appellate Exhibit IV, and has made complaints about his trial of which he had knowledge at the time, contrary to the terms of Appellate Exhibit III. As we have considered all of his contentions, in disregard of the restrictions purportedly created by these Appellate Exhibits, we have returned appellant to the position he would have held if these forms had never been used. No other remedy is necessary.

■ With regard to the second category of provisions challenged by appellant, we note first that the right against self-incrimination is not given up forever by a plea of guilty. This privilege is given up only as to the merits of the case. As to all other proceedings, the accused retains his privilege against self-incrimination. While the contrary implication in Appellate Exhibit V is technically incorrect, we do not find that appellant was thereby misled. The military judge correctly advised appellant of his rights to allocution under paragraph 53*h*,

Manual for Courts-Martial, United States, 1969 (Revised edition), including his right to remain silent, and appellant thereafter made an unsworn statement in extenuation and mitigation. As it appears that the parties interpreted the language concerning waiver of the privilege against self-incrimination as applying only to the trial on the merits, we find that appellant was not prejudiced.

■ Appellant now contends that he was denied a fair trial by language in Appellate Exhibit V that he gave up forever any motions to suppress any evidence or pretrial statements. Although appellant stated on the record that he had not been compelled to give up any motions,[8] he now asserts that this exhibit constituted not only a waiver of motions, but also a waiver of any objections to the improper use of evidence at any stage in the trial. We disagree with appellant's interpretation. We construe the language concerning waiver of motions as amplifying the previous sentence in Appellate Exhibit V that, "appellate courts have held . . . that a plea of guilty waives and gives up certain motions and certain objections to evidence." This provision imports no more than that a voluntary and informed plea of guilty waives an appellant's right to challenge on appeal the propriety of a judge's ruling admitting evidence that may have been illegally obtained. We find no reasonable possibility that appellant was misled as to what was waived by his pleas of guilty.

■ Appellant also attacks the provisions of Appellate Exhibit V to the effect that he disavowed all defenses. We note that appellant stated on the record that he had not been compelled to give up any defenses. A plea of guilty, however, cannot be accepted

---

8.  The providence inquiry in this case included a discussion concerning the possible merits of any suppression motions. It appears from that discussion that any suppression motions were foregone because of an unlikelihood of success.

We do not encourage trial judges routinely to inquire into the possible merits of any motions, as this area is one best left between the defense counsel and the accused.

where the accused asserts a defense at trial. Article 45(a), UCMJ. *See also United States v. Timmins*, 21 U.S.C.M.A. 475, 45 C.M.R. 249 (1972). The language in question did no more than what was required for entry of a provident plea. Its inclusion in Appellate Exhibit V does not call the providence of the pleas into question.

■ Only one other matter warrants discussion. Appellant asserts that the military judge should have made a detailed inquiry into appellant's understanding of the contents of Appellate Exhibits III, IV, and V prior to receiving them into evidence by stipulation. We hold that the stipulations in question were properly received. Paragraph 154b(1), MCM, 1969 (Rev.), states that a stipulation should not be received in evidence if any doubt exists as to the accused's understanding of what is involved. In the case of each of these exhibits, the military judge asked appellant if he concurred in the stipulation and received an affirmative reply. Many of the matters contained in the exhibits were the subject of independent inquiry by the judge. In the case of Appellate Exhibit III, appellant stated that he understood everything therein. In the case of Appellate Exhibit V, appellant stated that he had gone over every entry therein, had discussed each paragraph with his attorney, and understood

everything. We decline appellant's invitation to extend the holding of *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977), to nonconfessional stipulations in guilty plea cases.

The remaining assignments of error do not warrant discussion.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge CARNE concurs.

COOK, Judge, dissenting:

Regrettably, I am unable to concur in the conclusion arrived at by my brother judges. In my view the conduct of the trial judge in this case was erroneous in so many particulars that I am compelled to conclude that it was prejudicial.

The appellant pled guilty, and it was during the course of an ensuing punctilious *Care*[1] inquiry that the judge, either personally or under his sanction, repeatedly directed erroneous and misleading advice to the appellant concerning the conclusive nature of the trial level proceedings. I believe that a fair reading of the record leads to the inescapable conclusion that the trial judge was bent on discouraging the appellant from exercising his appellate rights.[2]

---

1. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

2. The trial judge that presided in this case is apparently obsessed with the concept that he must control all aspects of a case involving a guilty plea. He has to date succeeded in uncoupling the convening authority from his role in the guilty plea negotiations by effectively displacing him. He has accomplished this by the simple device of making the accused an offer he can hardly refuse. It is obvious to me from a study of some 39 guilty plea cases over which this judge presided post-17 January 1977, that he had effected a pretrial agreement with trial defense counsel that if they would plead their clients guilty at arraignment, without a prior negotiated deal on sentence with

the convening authority, the judge would not impose a sentence in excess of a bad-conduct discharge, 8–12 months confinement, total forfeitures, and total reduction. He adhered to this agreement irrespective of the offenses or maximum sentence involved. Several of the guilty plea cases he presided over during this period carried maximums of 10 and 20 years confinement, and one even as high as 35 years confinement. Nevertheless, he invariably imposed bad-conduct discharges and the confinement adjudged ranged from six months to 10 months; the 10 month period being the duration of the confinement imposed in the 35-year case. This practice has, as one might expect, all but eliminated pretrial agreements with the convening authority in the jurisdiction serviced by this judge. This Court deals with this situa-

At the risk of unseemly repetition and prolixity, I will set out verbatim those portions of the record of trial, to include extracts from certain Appellate Exhibits, which I consider misleading.

Appellate Exhibit III, titled "Rights Understanding" contains the following two inaccurate statements:

(h) If I have any complaint against my defense counsel or concerning my trial, I know that I may bring my complaint to the attention of the military judge and he will conduct a thorough and impartial investigation which would go along with my record of trial for all to read and use during initial or appellate review of my case. Whenever I do not raise any complaint before the military judge of which I have knowledge, I understand by my silence that I forever waive and give up any such complaint which I might have;

(i) I understand that I must call all of my witnesses during my trial and put into evidence all real and documentary and other evidence which I may have, and if I have evidence which I do not use, I am forever barred in the future from using that evidence. I understand that such failure to use evidence available to me at trial is a giving up that evidence,

and that that unused evidence may never be used by me in the future; [3]

Appellate Exhibit IV, titled "Stipulation Showing Lack of Pretrial Agreement," reads verbatim, less heading and signatures, as follows:

Both sides, with express consent of the accused, stipulate and agree that in this case there is no pretrial deal, agreement, or understanding, oral or written, formal or informal, open or hidden, between the accused and anyone. The accused is entering a plea of guilty understanding that he has no agreement with anyone; he is placing himself on the mercy of the Court-Martial; he understands that the Court-Martial may sentence him anywhere from the maximum punishment [4] down to no punishment. Both sides stipulate that the facts contained in this stipulation of fact are conclusively determined; no appellate authority shall seek to go behind these facts; and no affidavits, letters, or any other extra-record matters made subsequent to the date of this stipulation [5] shall ever be used to contradict the terms and facts contained in this stipulation of fact.

[Signature of Trial Counsel]

[Signature of Defense Counsel]

MJ: It's received in evidence pursuant to stipulation; and I will turn this over to the court reporter. Before I do so, however, let me ask: Have you had sufficient time, Specialist O'Nan [sic], to have gone over all of these articles of the Uniform Code, read the case of *Johnson* versus *Zerbst*, and *familiarized yourself entirely with military law*?

ACC: Yes, I have, sir. (emphasis supplied.)

The obvious absurdity of appellant's response to the trial judge's question lends credence to my view that the appellant did not have any real appreciation of the enormity of the propositions to which he was being requested to subscribe.

---

tion in *United States v. Caruth*, 4 M.J. 924 (A.C.M.R.1978) (*en banc*). Although never mentioned in any of the five opinions in that case, it would appear indisputable that this judge has abrogated his duty to determine an appropriate sentence "after a consideration of all the facts and circumstances involved in the case" (para. 76a(2), MCM, 1969 (Rev.)) to the detriment of the government. While I recognize that a trial judge is charged with the ultimate accountability for what occurs in the courtroom (*see* footnote 8, *infra*), obviously he must, nevertheless, discharge his duties in a responsible and legally acceptable manner. As sought after an objective as "judicializing the military justice system" may be (*see* footnote 13, *infra*), it is not an end which may be attained by any and every means.

3. The following colloquy occurred in connection with the admission of the document that contained these paragraphs:

4. This concession by the appellant was made well in advance of any announcement or discussion by the trial judge as to what he deemed the maximum sentence to be.

5. It is undated.

Knowing of my right not to stipulate, I hereby freely and voluntarily enter into this stipulation; I freely and voluntarily sign this stipulation; and I freely and voluntarily agree to be forever bound by this stipulation into the future for all time.

[Signature of the accused] [6]

Turning now to Appellate Exhibit V, "Waiver of Rights in Guilty Plea Cases," it is also replete with statements that are either totally incorrect, are subject to substantial and important qualifications, or are capable of deluding appellant to his detriment. These read:

b) That I am subject to the jurisdiction of the court; that the offense committed is also subject to the jurisdiction of the Court;

.    .    .    .    .

e) I know that by pleading guilty I do not receive a trial on the issue of guilt or innocence. I know I have the right to such a trial, and I hereby consciously, intelligently and voluntarily waive and give up that right forever in the future;

.    .    .    .    .

I hereby give up forever may right against self-incrimination, that is the right to say nothing at all; [7]

I hereby give up forever my right to a trial on guilt or innocence, that is, the introduction of evidence by the government, and the introduction of evidence by myself, should I desire to introduce any, and a decision by the court on the issue of my guilt or innocence;

I hereby give up forever my right to confront and cross-examine witnesses against me;

.    .    .    .    .

I hereby give up forever any motion to suppress any evidence;

I hereby give up forever any motion to suppress any pre-trial statements;

I hereby disavow all defenses of any nature. I have discussed all possible defenses with my trial defense attorney, I understand them, and I consciously, intelligently and voluntarily disavow each and every one of them.

[Signature of the accused]

6. Lest anyone think that the trial judge was a stranger to this agreement prior to its appearance at trial, I refer to the following exchange which appears in the record *prior* to the introduction of this stipulation at trial by the defense counsel and invite a comparison of the language used by the trial judge with that contained in the document.
   MJ: Do you have a guilty plea agreement, formal or informal, oral or written, open or hidden, expressed or implied, with anyone?
   ACC: I do not, sir.
   MJ: Are you pleading guilty and throwing yourself on the mercy of the court-martial, understanding that the court can sentence you to the maximum authorized punishment?
   ACC: I am, sir.
Later in the record, the trial judge alludes to his awareness that Defense Appellate Division was alleging that he had made pretrial agreements with counsel. *See* footnote 2, *supra.* I do not highlight this marked coincidence in an attempt to establish a *de facto* agreement between counsel and the judge. I agree with the majority that the evidence in this case fails to establish a *de facto* pretrial agreement. (Apparently appellant was not accorded the benefits of the arrangement I described in footnote 2, *supra,* because he originally pled not guilty at arraignment.) I do believe, however, that the amazing similarity in language does identify the moving force behind the creation of Appellate Exhibit IV, which in turn is another illustration of how this judge orchestrated this hearing with a view to impressing upon the appellant the impossibility of ever contradicting or challenging anything on appeal.

7. If I understand the majority opinion, they rely upon the fact that the appellant made a statement during the sentencing portion of the trial to conclude that he was not misled by the language in this clause. I believe the same facts are subject to an opposite interpretation. At the very least, it must be said that we cannot be certain that this erroneous information did not induce appellant to speak when he was entitled to remain silent.

The inclusion of the word "forever" in most of the foregoing assertions is, of course, what makes them inherently false and, therefore, repugnant. In some instances the statement is incorrect even when applied to the hearing at hand, much less "forever," e. g., an accused who pleads guilty does not relinquish his right to say nothing at all during the sentencing portion of his trial and he certainly does have the right to cross-examine adverse witnesses, if any, during that part of the hearing. As to the statement concerning jurisdiction, it is erroneous because it is capable of deceiving an individual into the belief that he has irrevocably conceded jurisdiction when, in point of fact, he cannot legally do so. Additionally, the purported blanket disavowal of all defenses, e. g., statute of limitations and insanity, is absurd on its face to anyone knowledgeable in the law.

Although these exhibits were offered by the trial defense counsel, the trial judge cannot disassociate himself from responsibility for their contents.[8] This is true even assuming he was not instrumental in their preparation (which is a proposition I am unwilling to embrace, although I will accept it for the purposes of this opinion).

Proceeding now to some excerpts from the verbalized portion of the record. At page 23, we find the following:

MJ: Can you tell me then on the record that you will never in the future claim you are innocent of these specifications and the charge?

ACC: I will never in the future claim innocence of any of these charges, sir.

And on pages 26 and 27 this appears:

MJ: . . . Fifth, you give up forever any motions to suppress evidence or any motion of that nature, in the nature of suppression to suppress a pretrial statement, those types of motions are forever given up; and

MJ: Finally, you disavow all defenses. Now, stated another way, you give up almost every right you have except for the issue of jurisdiction in the court-martial.[9] Do you understand those rights?

ACC: Yes, sir.

MJ: Do you understand you are waiving and giving up those rights forever?

ACC: I understand that, sir.

MJ: Do you want to do that?

ACC: Yes, I do, sir.

MJ: Then state on the record, "I hereby waive my rights forever."

ACC: I hereby waive my rights forever.

It is at this juncture of the trial that the trial defense counsel offered into evidence Appellate Exhibit V, "Waiver of Rights in Guilty Plea Cases," which was discussed *supra*.[10] Pages 30, 31 and 32 contain these passages:

MJ: You notice that you are not under oath. Even though you are not under oath, you are forever bound by what you

---

8. "The trial judge is more than a mere referee, and as such he is required to assure that the accused receives a fair trial." *United States v. Graves*, 1 M.J. 50, 53 (C.M.A.1975). His total involvement is of particular importance in connection with the acceptance of guilty pleas. *See United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); *United States v. Green*, 1 M.J. 453 (C.M.A.1976); *United States v. Lanzer*, 3 M.J. 60 (C.M.A.1977); *United States v. King*, 3 M.J. 458 (C.M.A.1977).

9. While it could be argued that this sentence clarified the misleading statement concerning

the concession of jurisdiction inherent in a guilty plea, discussed earlier, I would observe that, on the contrary, this "clarification" constituted an item of conflicting information which the judge should have subsequently undertaken to eradicate.

10. Again, I invite attention to the similarity of the language in the quoted exchange and that found in Appellate Exhibit V. *See* footnote 6, *supra*.

say here. You cannot go to your next duty station and make an affidavit or any out-of-court document the contents of which are inconsistent with what you say here, and use if before the appellate courts. Do you understand that?

ACC: I do, sir.

MJ: Even though you are not under oath, the appellate courts will look at no other source in deciding the providency or the improvidency of your plea of guilty. Do you understand that?

ACC: I do, sir.

MJ: Do you understand you are forever bound by what you say here?

ACC: I do, sir.

MJ: Are you willing to be forever bound by what you say here?

ACC: I am, sir.

.        .        .        .        .

MJ: Do you understand that many soldiers come into court in a providency hearing, like this that we are having right now, and they say to the court, "I did it. I am guilty."; then after they are found guilty, they go to their next duty station, and they make affidavits or write letters saying, "I was innocent. I didn't do it."? Do you understand that?

ACC: I do, sir.

MJ: You understand that's why I am going into this part of the providency hearing now, to determine that you will not do that in the future?

ACC: I do, sir.

MJ: Can you assure me then that you will never in the future write an affidavit or a letter or any other document saying that you were innocent?

ACC: No, sir; I will not do that.

MJ: And can you tell the appellate court that if you do that they should disregard it?

ACC: If I do that, the appellate courts should disregard it, sir.[11]

Query: Is the majority correct when it states that "The tenor of the challenged language was not to prevent appellant from raising complaints or presenting evidence, but to encourage him to do so on the record of trial."?

Unlike my brethren I am unable to state with any sense of assurance that the misleading advice and domineering conduct of the trial judge did not result in specific prejudice to the accused. I am in full accord with my compatriots when they opine that the scope of our appellate review is not subject to diminution by the mutual agreement of the parties at the trial level. But that proposition is not determinative of the question of whether or not an appellant can effectively be stripped of his appellate rights by a trial judge who misadvises him on the subject. The obvious answer is that a trial judge can inculcate an accused with erroneous information and thereby cause the accused to fail to assert an error on

---

11. In this same vein, immediately after he imposed sentence the trial judge exacted a statement from the accused concerning his desires reference an Article 38(c) brief as well as his election *viz.* a petition for a new trial. The appellant replied that he was not going to avail himself of either of these posttrial avenues of possible complaint. In view of all that had preceded these two particular inquiries, I do not believe that I am too conjectural in concluding that the trial judge posed these unique inquiries at the time he did in order to elicit the responses he received and thus all but insure that neither Article 38(c) nor a petition for a new trial would be resorted to to disturb "his" proceedings. In any event, I am at a loss to understand how the appellant's intentions in these premises should be of any concern to the trial judge. Secondly, I believe it is unfair, putting it in the best light, to exact a decision on these matters before appellant and counsel have had an opportunity for sequestered and deliberate reflection. I also note that the form requesting appellate defense counsel was required by the trial judge to be presented at this juncture. This too seems premature. *See United States v. Darring*, 9 U.S.C.M.A. 651, 26 C.M.R. 431 (1958).

appeal in the belief that such an effort would be inefficacious.[12] The crucial issue then is, did that happen in this case to this appellant? The majority says not, based upon the fact that appellate counsel have asserted two errors contrary to the terms of the promises exacted from appellant at trial. Both of the asserted errors are, however, highly legalistic in nature, which makes it apparent to me that they did not originate with the appellant. Consequently, they do not satisfy me that the appellant has ever been disabused of the misapprehension that this Court would disregard, out of hand, any effort on his part at this juncture to disavow his guilt and assert a claim of innocence. The fact that he has not submitted such an assertion proves nothing. It may be no more than mute testimony to the effectiveness of the trial judge's methodology. It is, therefore, at best, a neutral circumstance.

I am also not satisfied that we are in any position truly to gauge the chilling effect that the "I-hereby-give-up-forever" clauses contained in Appellate Exhibit V, *supra*, may have had on appellant in his considerations concerning an effective appeal. As the U.S. Supreme Court said concerning such effects, "The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether the effect is unnecessary and therefore excessive." *United States v. Jackson*, 390 U.S. 570, 582, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968). I have no hesitancy in concluding that such an effect was in this case unnecessary and consequently excessive.

In conclusion I believe that an accused in our judicial system (even one who is by his own judicial confession plainly guilty of a criminal offense) is entitled to a fair hearing. A trial in which the judge repeatedly misinforms an accused as to his substantial rights does not, in my estimation, meet that criterion.[13] I would therefore reverse this case and authorize a rehearing.

---

12. "The influence of the trial judge . . . 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' " *Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1468 (1933). "The military judge, because of his figurehead status, and the powerful and influential position that he occupies, must guard against abuse or unwitting exploitation of that authority, even though he may consider that he has a valid reason." *United States v. Taylor*, 47 C.M.R. 445, 451 (A.C.M.R.1973). "The judicial process is a delicate device which places the military judge at the fulcrum of the scales of justice." *United States v. Cardwell*, 46 C.M.R. 1301, 1305 (A.C.M.R.1973). "For history proved that judges too were sometimes tyrants." *Poulos v. New Hampshire*, 345 U.S. 395, 426, 73 S.Ct. 760, 777, 97 L.Ed. 1105 (1953) (Douglas J., dissenting).

13. See the discussion and the cases cited in the chapter entitled "The Military Judge Must Ensure that the Accused Receives a Fair Trial", Cooke, The United States Court of Military Appeals, 1975–1977: Judicializing The Military Justice System, 76 Mil.L.Rev. 55 (1977). Whether specific prejudice (*United States v. Lucas*, 1 U.S.C.M.A. 19, 1 C.M.R. 19 (1951)) is identifiable in this case or not gives me little pause because I find the presence of general prejudice (*United States v. Berry*, 1 U.S.C.M.A. 235, 2 C.M.R. 141 (1952)) to be abundantly conspicuous.